IN RE the MARRIAGE OF: Constance M. MILLIKIN, Petitioner-Respondent-Petitioner,

v.

James A. MILLIKIN, Respondent-Appellant.

Supreme Court

*No. 81–1562. Argued September 8, 1983.—*
*Decided November 1, 1983.*

(Also reported in 339 N.W.2d 573.)

For the petitioner there was a brief (in this court) by *Stephen D. Willett* and *Olson & Willett, S.C.*, Phillips, and oral argument by *Stephen D. Willett* and *Kevin B. Klein*.

For the respondent-appellant there was a brief (in court of appeals) by *Edith Delaine Amundsen* and *Jerome A. Maeder, S.C.*, Wausau, and oral argument by *Keith Kostecke*.

WILLIAM G. CALLOW, J.   This is a review of an unpublished decision of the court of appeals reversing an order dismissing a petition for a change of custody and remanding the matter to the circuit court for further proceedings. The order was entered by the Taylor county circuit court, Judge Gary L. Carlson. We reverse the decision of the court of appeals.

On June 20, 1978, Constance Millikin (petitioner) and James Milliken (respondent) were divorced in the county court of Taylor county. The parties stipulated that Constance, who was pregnant with Victoria, would take custody of their minor children, and this was made part of the divorce judgment.

In late 1980, James petitioned the Taylor county circuit court to change custody of the two older children, James and Shawn, on the grounds "that he believes that the home environment at the Petitioner's [Constance] house is detrimental to their health and welfare and that he can provide a cleaner and safer environment and one with more love and attention." He did not seek custody of Victoria. Pursuant to an order to show cause entered by the court, a Taylor county social worker, Larry Knowlton, investigated the children's custody situation. In a report filed with the court on April 9, 1981, Knowlton recommended that custody of the children be granted to James. The court appointed Peter J. Thompson as guardian ad litem for the two Millikin children. How-

ever, the records does not reflect that Thompson made a recommendation concerning the custody of the children, nor did the trial court in reaching its decision mention any recommendation.

On July 22, 1981, the court held a hearing on the custody petition. After hearing testimony from James Millikin, Cecile Millikin (James' new wife), Larry Knowlton, and the two Millikin children, the court dismissed James' petition on the grounds that James had failed to show by substantial evidence that the change of custody was necessary to the children's best interests. In so ruling, the court relied on its interpretation that sec. 767.32(2), Stats., required James to meet a higher burden of proof to show that the custody change was necessary to the children's best interests. The court carefully reviewed on the record the testimony presented to support the change of custody. The court concluded that, although James had indeed presented evidence showing that the children's living situation was less than ideal, James simply had not made the requisite showing that a change of custody was necessary to the children's best interests.

James appealed the dismissal of his petition to the court of appeals. The court of appeals held that the circuit court had not provided enough information in its decision for the court to determine whether the circuit court had applied the proper burden of proof. The court of appeals found that the new language in sec. 767.32, Stats., did not evince a legislative intent to change the standard and burden of proof to be applied for changes of custody. The court of appeals ruled that the circuit court should again review the evidence but only to decide what custody arrangements would be in the best interests of the children. Accordingly, the court of appeals reversed the circuit court's dismissal of the petition and remanded the matter for further consideration.

The issues presented on this review are whether in dismissing the respondent's petition for a change of custody the circuit court applied the proper rule of law and whether in applying the law the court abused its discretion.

Prior to the enactment of the Divorce Reform Act in 1977, motions for change of custody were governed by former sec. 247.24(2), Stats., which provided in relevant part: "Whenever the welfare of any such child will be promoted thereby, the court granting such judgment shall always have the power to change the care and custody of any such child, either by giving it to or taking it from such parent," and former sec. 247.25, which provided in relevant part: "The court may from time to time . . . revise and alter such judgment concerning the care, custody, maintenance and education of any of the children, and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require." Under these statutory provisions, this court developed a two-track system for custody changes. If the original custody award was by stipulation, the court, upon a petition for a change of custody, would hold a full-scale hearing to evaluate both parents to determine with which parent the child's welfare would be best promoted. *Marotz v. Marotz,* 80 Wis. 2d 477, 485, 259 N.W.2d 524 (1977). At this hearing, all parties would have an equal burden of showing that it was in the best interests of the child to be placed with them. *Id.* The reason for the full-scale hearing was that in a custody award by stipulation there had been no judicial resolution of the matter of custody in which the court made findings of fact as to the fitness of both parties seeking custody and as to the best interests of the child. *See Haugen v. Haugen,* 82 Wis. 2d 411, 414, 262 N.W.2d 769 (1978).

If custody was awarded after a full-scale inquiry during the original divorce proceeding, the parent seeking a

change in custody would have to show that there "'was such a substantial or material change in the circumstances of the parents or of the child as would require or justify in the interest of the child a modification of the previous determination. . . .' *King v. King* (1964), 25 Wis. 2d 550, 554, 131 N.W.2d 357." *Freye v. Freye,* 56 Wis. 2d 193, 196, 201 N.W.2d 504 (1972). Thus, the burden would be on the moving parent to show that there was a material change of circumstances, *Marotz,* 80 Wis. 2d at 485, that he or she would be a fit parent, *id.,* and that the change of circumstances had an adverse effect on the child, *Goembel v. Goembel,* 60 Wis. 2d 130, 140–41, 208 N.W.2d 416 (1973). The changed circumstances test was designed "to discourage repetitious litigation of a custody issue and to protect the children by preventing their being made pawns in a contest between the parents." *Delchambre v. Delchambre,* 86 Wis. 2d 538, 540, 273 N.W.2d 301 (1979).

As noted earlier, former sec. 247.25, Stats., permitted a change of custody as "the benefit of the children shall require." This language was repealed (Ch. 105, sec. 40, Laws of 1977) and recreated by the Divorce Reform Act (Ch. 105, sec. 38, Laws of 1977) to mandate that a change of custody "shall be based on a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change of custody under [sec. 767.24(2), Stats.]."[1]  Sec. 247.32(2), 1977,

---

[1] Sec. 767.24(2), Stats., provides:

"(2) In making a custody determination, the court shall consider all facts in the best interest of the child and shall not prefer one potential custodian over the other on the basis of the sex of the custodian. The court shall consider reports of appropriate professionals where admitted into evidence when custody is contested. The court shall consider the following factors in making its determination:

(a) The wishes of the child's parent or parents as to custody;
(am) The wishes of the child as to his or her custody;

renumbered sec. 767.32(2), 1981–82. This provision was made applicable to "[a]ny modification of a custody order which removes a child from the care of a parent having custody of the child." *Id.* The issue on this appeal is whether the legislature intended to change the existing custody modification system by its revision of sec. 247.25, 1975.

In *Corcoran v. Corcoran,* 109 Wis. 2d 36, 324 N.W.2d 901 (Ct. App. 1982), the court of appeals reviewed the legislative history of sec. 767.32(2), Stats. That review noted that the legislature had considered stronger language ("essential" rather than "necessary"), a higher burden of proof ("compelling countervailing factors" rather than "substantial evidence"), and a presumption that it was in the best interest of the child to remain in the existing custodial arrangement. *Id.* at 40–41. These proposed changes were dropped when the present statute was enacted. Nonetheless, the *Corcoran* court found the

(b) The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest;

(c) The child's adjustment to the home, school, religion and community;

(d) The mental and physical health of the parties, the minor children and other persons living in a proposed custodial household;

(e) The availability of public or private child care services; and

(f) Such other factors as the court may in each individual case determine to be relevant."

Former sec. 247.24(1m), Stats., 1977, contained the same factors as those now in sec. 767.24(2). The legislature renumbered sec. 247.24(1m) as sec. 767.24(2). Ch. 32, sec. 50 and Ch. 196, sec. 25, Laws of 1979. However, in renumbering sec. 247.32(2) to 767.32(2), the legislature neglected to change the cross-reference to sec. 767.24(2); thus it remained 767.24(1m), which, of course, no longer existed under that designation. This situation was rectified when the legislature changed the cross-reference to sec. 767.24(2). Ch. 314, sec. 146, Laws of 1981 (effective May 1, 1982).

legislature had evinced an intent to make custody changes harder to obtain. We agree with *Corcoran's* interpretation of the legislative history behind sec. 767.-32(2).

The new statutory language reflects the legislature's intent to forbid custody modification absent "substantial evidence supporting a change of custody" showing "such removal is necessary to the child's best interest. Sec. 767.32(2), Stats. This would seem to require (1) that the burden is on the moving party to bring forward substantial evidence supporting a change of custody and (2) that a higher standard is to be applied in determining whether a change of custody is warranted. A simple showing that the best interest of the child would support a change in custody is not enough; there must be a showing by substantial evidence that " 'removal is necessary.' " *Corcoran,* 109 Wis. 2d at 42. Of course, in deciding whether a change of custody is necessary, the court will review all relevant factors as listed in sec. 767.24(2). However, we emphasize that in reviewing the sec. 767.24(2) factors the court's focus must be on the necessity for removal.

Although we cannot define with precision the word "necessary" for purposes of a change in custody determination, we note that the "necessary" standard has a higher threshold than a simple showing of "best interest," but a lower threshold than "essential." Thus, for example, "necessary" does not mean that the child need be in impending or immediate danger of life, health, or safety. Rather, we view "necessary" as implying that the change of custody itself is needed because the current custodial conditions are harmful in some way to the best interest of the child. Such harm should not be found, however, simply because the custodial parent cannot

match the better general living conditions offered by the parent seeking change of custody. In order for better living conditions to become significant, they must rectify a condition in the current custodial arrangement that is harmful to the child's best interest.

We have noted that sec. 767.32 (2), Stats., on its face applies to "[a]ny modification of a custody order." We interpret the statutory langauge to mean that sec. 767.32 (2) applies to all custody modifications, whether they derive from stipulated or from litigated custody awards. Therefore, for purposes of custody modifications, the court should henceforth treat stipulated and litigated custody awards on the same footing.[2] However, we find nothing in sec. 767.32 (2) which would prevent the circuit court from developing a fuller record where there has been a stipulated custody award. We recognize in this regard that the court may not be able to make a fully informed decision on the necessity for a change of custody without first being made aware of the full history of the custody situation. Similarly, the court can limit the evidence adduced at a hearing when the original custody award was made after a litigated hearing. This system will foster the interests recognized in *Haugen, supra,* i.e., the need for a full factual inquiry where none was had before, and in *Delchambre, supra,* i.e., the need to preserve judicial resources by not relitigating previously established matters.

We also find that the equal treatment of stipulated and litigated custody awards is supported by the general legislative intent behind the Divorce Reform Act. The legislature intended, in part, to establish a no-fault

---

[2] We note that our decision means that the court-imposed "changed circumstances" test is not longer controlling in change of custody determinations. However, changed circumstances may be considered relevant under sec. 767.24 (2) (f), Stats.

divorce system which would "promote the settlement of financial and custodial issues in a way which will meet the real needs of all concerned persons as nearly as possible." Ch. 105, sec. 1, Laws of 1977. We conclude that placing stipulated and litigated custody awards on the same footing will encourage thoughtful custody disposition through stipulation, thereby minimizing subsequent custody litigation.

In reviewing the disposition by the trial court in this case, "the [custody] award will not be upset . . . unless it represents a clear abuse of discretion, or unless the trial court has applied an erroneous rule of law." *Allen v. Allen,* 78 Wis. 2d 263, 271, 254 N.W.2d 244 (1977) (footnotes omitted).[3] We turn first to the question whether the circuit court applied an erroneous rule of law.

■

Our review of the record makes it clear that the circuit court properly applied the test embodied in sec. 767.32 (2), Stats. In reviewing the statute, the court stated:

"The legislature, however, in the revised statute, incorporated a very specific change; a change with the full intention of doing precisely what it says, which is to make it very difficult once custody has been granted to a party to change that custody.

"It states that: 'Any modification of a custody order which removes the child from the care of the parent having custody of the child shall be based on a finding that such removal is necessary to the child's best interests as

---

[3] Under the *Allen* test, this court may review whether the trial court's findings of fact on the custody award are "against the great weight and clear preponderance of the evidence." *Allen v. Allen,* 78 Wis. 2d 263, 271, 254 N.W.2d 244 (1977). On this appeal, however, James is not challenging the trial court's findings of facts; rather, he is challenging the trial court's determination that the fact did not support the legal conclusion that a change of custody was necessary to the children's best interests. Therefore, we need not review the trial court's findings of fact.

shown by substantial evidence supporting a change in custody.'

"Two elements I perceived in this. Not only that it be in the best interests of the children, but that it is necessary for the best interests of the children. It's a higher standard in my opinion. Secondly, it must be shown by substantial evidence supporting a change in custody."

While we are not prepared to agree with the trial court that the legislature intended to make custody changes "very difficult" to obtain, we find that the court nevertheless applied the correct rule of law. Therefore, the court of appeals erred in reversing and remanding the matter.

We now turn to the question whether the circuit court's order represents a clear abuse of discretion. "To find an abuse of discretion an appellate court must find either that discretion was not exercised or that there was no reasonable basis for the trial court's decision." *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624 (1981). In this case the question before the court is whether there was a reasonable basis for the circuit court's order dismissing the petition.

The circuit court reviewed the testimony of each witness who testified in support of the change in custody. The court noted that James Millikin "quite candidly admitted that the reason he's brought the petition is because he is informed that the boys don't like [their stepfather] and would rather live with him than with them." James also testified that he had no real concerns about the boys' physical condition. Larry Knowlton, the Taylor county social worker, testified that a change of custody would have been in the children's best interests, but he was unable to form an opinion as to whether such a change rose to the level of being necessary to the children's best interests. The court recognized that the children had problems dealing with their stepfather. Nevertheless, the court concluded, after considering all the

testimony, that these problems did not rise to the level of making a change of custody necessary.

At the hearing the trial court stated that, if this had been an original custody determination, it might have reached a different result. The court recognized that under a simple "best interests" test, as applied at an original custody determination, the balance might have tipped in favor of James. However, the court concluded that under the more stringent "necessity" test of sec. 767.32(2), Stats., the balance tipped in favor of Constance. This shows that the court carefully weighed the relevant factors in making its custody determination. Accordingly, we do not find that the court abused its discretion in concluding that James Millikin had failed to show by substantial evidence that the change of custody was necessary to the children's best interests.

*By the Court.*—The decision of the court of appeals is reversed.