IN RE the MARRIAGE OF: Thomas E.
THOMPSON, Petitioner,

v.

Mary P. THOMPSON, Respondent.

Court of Appeals

*No. 84–1807. Submitted on briefs October 9, 1985.—Decided
February 11, 1986.*
(Also reported in 384 N.W.2d 713.)

For the appellant there was a brief by *Robert M. Frisbee* and *M. Gene Henriksen* of Edina, Minnesota.

For the respondents there was a brief by *Edward F. Vlack* and *Davison & Vlack,* guardian ad litem for Aaron Lamson, of River Falls.

Before Cane, P.J., Dean and LaRocque, JJ.

LaROCQUE, J.   Kevin Lamson, a Minnesota resident, appeals a judgment granting custody of his illegitimate minor son to Mary Thompson, the child's mother, and ordering him to pay child support. A challenge is made to both the subject matter and personal jurisdiction of the Wisconsin trial court. We conclude that the trial court had personal and subject matter jurisdiction over the custody dispute by virtue of the Uni-

form Child Custody Jurisdiction Act (UCCJA)[1] but did not apply the proper standard for a custody modification. We also conclude that the trial court lacked personal jurisdiction over Kevin to set support. We therefore remand the custody decision for further proceedings and reverse and vacate the support order.

At issue in this matter is the custody of Aaron Lamson,[2] born to Kevin and Mary out of wedlock in Minnesota in 1974. Kevin was ordered to pay support in Minnesota, and Mary retained custody. In 1975, Mary married Thomas Thompson and in 1979 the family moved to Wisconsin. About a year later, she left Thomas and returned with the child to Minnesota. Thomas filed for divorce in Wisconsin, and a guardian ad litem was appointed for Aaron, but Thomas initially did not seek custody. Kevin then filed a Minnesota action seeking Aaron's custody. To resolve that action, Kevin and Mary stipulated to joint custody, and Judge Thomas G. Armstrong, of the District Court for Washington County, Minnesota, entered judgment accordingly.

A month later, Thomas served Kevin with an amended Wisconsin summons and petition seeking Aaron's custody. He simultaneously moved the Minnesota court to vacate its joint custody award. Minnesota has also adopted the UCCJA,[3] and the Minnesota trial court, while recognizing the existence of its jurisdic-

---

[1] Wis. Stat. Ann. §§ 822.01 to 822.25 (West 1977).

[2] The child was born Aaron McKenzie. In 1983, his name was legally changed to Aaron Lamson.

[3] Minn. Stat. Ann. §§ 518A.01 to 518A.25 (West 1977).

tion, declined to exercise it.[4] The Wisconsin trial court then awarded custody to Mary, ordered Kevin to pay support, and granted Thomas visitation rights. Finally, in September, 1983, the Minnesota court issued an order vacating the Minnesota custody judgment and recognizing the jurisdiction and validity of the Wisconsin judgment.

---

[4] Judge Armstrong's order of March 12, 1982, states in part:

1.  The Court will take under advisement the motions before it, not make any ruling on them, but hold them under advisement until such time as Judge Hughes has rendered a decision in the matters before him in the State of Wisconsin concerning custody and or visitation rights of Aaron McKenzie and any action that may involve Kevin Lamson in Wisconsin.

2.  The Court is not making any decision as to Wisconsin jurisdiction or as to any law of the State of Wisconsin.

3.  The Conclusions of Law entered on the fourth day of February, 1982 are in effect and considered a temporary order in this case.

4.  After the decision has been made in the State of Wisconsin the Court will, upon request of one of the parties, set the matter on for hearing in the State of Minnesota.

5.  The Court has retained complete jurisdiction in this case and can, because of the timely motion, reconsider the entry of the judgment and decree.

Judge Armstrong also wrote an explanatory letter dated June 1, 1982, to Judge Hughes that has also been made part of the record. The letter reads in part:

In reading your memorandum I noted that you said that the Minnesota court had deferred jurisdiction on this matter. I do feel that Minnesota has jurisdiction over the natural child of Kevin Lamson and Mary Thompson. However, in deferring the issue I only meant to imply that I would give your court first opportunity to make a decision on the matter. Pursuant to Minnesota law, I don't know of any way that I could not take jurisdiction of the Lamson-Thompson child.

The threshold issue in this appeal is whether the Wisconsin court had subject matter jurisdiction to decide the custody dispute. Kevin argues that the Minnesota court never relinquished its jurisdiction. Subject matter jurisdiction is conferred by statute and by the constitution. *Guardianship of Eberhardy,* 102 Wis.2d 539, 548, 307 N.W.2d 881, 885 (1981); Section 801.04, Stats. Kevin's challenge to subject matter jurisdiction fails because it does not distinguish between the *existence* of and the *exercise* of jurisdiction. In this instance, though jurisdiction existed with the Minnesota court, that court, as permitted under the UCCJA, declined to exercise it with respect to Thomas' motion to vacate the Minnesota judgment. Sections 822.03(1)(d), [5] 767.015, and 767.05(2), Stats., therefore conferred subject matter jurisdiction in Wisconsin.

Wisconsin also had personal jurisdiction over Kevin by virtue of section 822.05, Stats., since Kevin was personally served in Minnesota with an amended summons and petition seeking Aaron's custody in the Wisconsin action. While the Wisconsin trial court had jurisdiction over the subject matter of Aaron's custody and personal jurisdiction over Aaron's natural father,

---

[5] Section 822.03(1)(d), Stats., provides in part:

(1)   A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

(d)   It appears that . . . another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interests of the child that this court assume jurisdiction.

it treated the dispute as an initial custody determination, rather than a modification of custody. The underlying purposes of the UCCJA[6] would be frustrated if another state's initial custody determination were to

[6] Section 822.01, Stats., provides:

Purposes; construction of provisions. (1) The general purposes of this chapter are to:

(a)   Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b)   Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c)   Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and family have a closer connection with another state;

(d)   Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e)   Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f)   Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g)   Facilitate the enforcement of custody decrees of other states;

(h)   Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i)   Make uniform the law of those states which enact it.

(2)   This chapter shall be construed to promote the general purposes stated in this section.

be ignored. *See Dragoo v. Dragoo,* 99 Wis.2d 42, 43–44, 298 N.W.2d 231, 232 (Ct. App. 1980); *see also Beier v. Beier,* 371 N.W.2d 52, 55 (Minn. App. 1985). Here, the Wisconsin trial court modified the Minnesota trial court's initial joint custody judgment. Keeping in mind the Act's intent to discourage duplicitous litigation, *Dragoo,* 99 Wis.2d at 43–44, 298 N.W.2d at 232, and to harmonize judicial actions of enacting states, *Beier,* 371 N.W.2d at 55, we conclude that a decision to terminate Kevin's joint custody and to award custody solely to Mary may be done only if the modification is supported by the correct legal standard.

Wisconsin and Minnesota each forbid custody modifications absent "substantial evidence supporting a change of custody" and proof that "such removal is necessary to the child's best interest." *See Millikin v. Millikin,* 115 Wis.2d 16, 23, 339 N.W.2d 573, 576 (1983); *see also State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn. 1983).[7] We conclude that these standards are substantially the same and that each require more than a finding that a custody modification is in the child's best interests.

The trial court failed to apply the *Millikin* modification test. The issue of modification is intertwined with the weight to be given witnesses' credibility, and the trial court is in a superior position to observe and determine credibility. *Minguey v. Brookens,* 100 Wis.2d

---

[7] Because we conclude that the requirements of *Millikin* in Wisconsin are substantially the same as *Gunderson* in Minnesota, we need not resolve the choice of law conflict that would otherwise exist in a family law case. *See Heath v. Zellmer,* 35 Wis.2d 578, 594 n.6, 151 N.W.2d 664, 671 n.6 (1967).

681, 689, 303 N.W.2d 581, 584 (1981). We therefore re-
mand to the trial court for the purpose of applying the
*Millikin* standard to the facts. This is especially appro-
priate because *Millikin* was not decided until Novem-
ber, 1983, over six months after the Wisconsin deci-
sion.[8]

■.

Finally, we hold that the trial court lacked per-
sonal jurisdiction over Kevin for the purpose of setting
support. Personal jurisdiction to hear actions affecting
the family[9] is limited, where personal claims are as-
serted, to those cases meeting specified residence and
status requirements.[10] Since Mary and Kevin never re-

---

[8] Although *Millikin* was decided after the trial in this case, the
statute upon which *Millikin* is based was in existence since the Di-
vorce Reform Act, ch. 105, § 38, Laws of 1977. Application of
§ 767.32(2), Stats. is therefore not being applied retroactively. *See
Estate of Bilsie,* 100 Wis.2d 342, 357, 302 N.W.2d 508, 517 (Ct. App.
1981); *see also Gould v. Gould,* 116 Wis.2d 493, 506, 342 N.W.2d 426,
433 (1984) (Steinmetz J., concurring).

[9] An action for support is an action affecting the family. Sec-
tion 767.02(1)(f), Stats.

[10] Section 767.05(1), Stats., provides:

Jurisdiction. A court of this state having jurisdiction to hear
actions affecting the family may exercise jurisdiction as provided
under ch. 801 except that personal jurisdiction is limited by s.
801.05(11).

Section 801.05(11), Stats., provides in part:

(11) Certain Marital Actions. In addition to personal jurisdic-
tion under sub. (1) and s. 801.06, in any action affecting the family in
which a personal claim is asserted against the respondent com-
menced in the county in which the petitioner resides at the
commencement of the action when the respondent resided in this
state in marital relationship with the petitioner for not less than 6
consecutive months within the 6 years next preceding the com-

sided together in Wisconsin, the trial court lacked personal jurisdiction to set support.[11]

*By the Court.*—Judgment as to custody is reversed and remanded for further proceedings consistent with this opinion. Judgment as to child support is reversed and vacated.

mencement of the action and the respondent is served personally under s. 801.11.

[11] The question of Thomas' visitation rights was resolved in post-trial litigation and is not addressed on appeal, nor is the issue of stepparent custody addressed in view of Thomas' failure to appeal the denial of his petition for custody.