STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas J. FILIPCZAK, Defendant-Appellant.

Court of Appeals

*No. 85–1226. Orally argued May 9, 1986.—Decided May 27, 1986.*

(Also reported in 390 N.W.2d 110.)

For the appellant Thomas J. Filipczak there were briefs and oral argument by *Gary E. Sherman.*

For the respondent State of Wisconsin there were briefs and oral argument by *Bronson C. La Follette,* attorney general, by *John D. Niemisto,* assistant attorney general.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J.   Thomas Filipczak appeals a judgment finding him in violation of a commercial fishing law, sec. 29.33(1), Stats.[1] The issue is whether Filipczak, as an employee, was properly convicted of not ac-

---

[1] Section 29.33(1) provides in relevant part:

(1)   License authorized. Any person desiring to conduct commercial fishing operations on any of the outlying waters shall first obtain a commercial fishing license. The department may limit the number of licenses issued under this section and designate the areas in the outlying waters under the jurisdiction of this state where commercial fishing operations shall be restricted. . . .

quiring a commercial fishing license.[2] Because we conclude that sec. 29.33(1) does not require Filipczak to acquire a commercial fishing license, we reverse the conviction and remand to the trial court for dismissal.

The relevant facts are uncontroverted. Department of Natural Resources (DNR) authorities observed Filipczak and a co-worker as they fished with nets through the ice on Lake Superior. Neither had a commercial fishing license, crew license, or tribal membership card. Both were employed by Gilmore Peterson, a member of the Red Cliff Band of the Lake Superior Chippewa Indians, and were fishing with tribal fishing tags provided by Peterson. Neither Filipczak nor his co-worker, however, were tribal members. The DNR officials issued a citation to both for commercial fishing without a proper license. After the trial court denied his pretrial motions to dismiss the citation, Filipczak pled no contest to the charge of commercially fishing without a license, sec. 29.33(1).[3]

Filipczak argues that he did not violate the sec. 29.33(1) requirement that "[a]ny person desiring to conduct commercial fishing operations on any of the outlying waters shall first obtain a commercial fishing license." He asserts that only an employer can "conduct" a commercial fishing operation and that, as an employee, he is not required to have a commercial fishing license. The interpretation of a statute involves a question of law that we review independently. *Hainz v.*

---

[2] Because of our conclusions, we do not address the other issues raised by Filipczak.

[3] Although the citation indicates that Filipczak violated §§ 29.33(1) and (4)(a), the parties stipulated at oral argument that he was convicted of violating only § 29.33(1).

*Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984).

Ordinarily, we interpret the nontechnical words of a statute on the basis of their plain meaning. *State ex rel. First National Bank & Trust Co. v. Skow,* 91 Wis. 2d 773, 781, 284 N.W.2d 74, 77 (1979). If the meaning of a statute is ambiguous, however, we will examine "the scope, history, context, subject matter and object of the statute" in order to implement the intent of the legislature. *Tahtinen v. MSI Insurance Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). A statute is ambiguous if reasonably well-informed individuals could construe the statute in two different ways. *Id.* at 166–67, 361 N.W.2d at 678.

We conclude that the meaning of "conduct" used in sec. 29.33(1) is ambiguous. Black's Law Dictionary 367 (5th ed. 1979) defines conduct as "[t]o manage; direct; lead; have direction; carry on; regulate; do business." Under this definition, reasonably well-informed persons could conclude that only the employer "manages," "directs," or "leads" the commercial fishing operation or that, under a broader view, employees "carry on" or "do business" as the commercial fishers and also fall within the licensing requirement.

Licensing statutes are construed liberally in favor of the citizen and strictly against the government. *See* 66 Op. Att'y Gen. 176, 177 (June 3, 1977) (quoting 53 C.J.S. *Licenses* § 13 (1948)). As a result, we adopt a narrow interpretation of what constitutes conducting commercial fishing operations and conclude that the licensing burden set out in sec. 29.33(1) is on the

employer leading the commercial fishing operation. Section 29.33 lays down the framework for licensing of commercial fishing and crew members. The commercially licensed employer may use a limited number of employees licensed as crew members to carry on the actual fishing activities. Section 29.33(4), Stats.[4] This section also places the burden on commercially licensed employers to ensure that their employees are properly licensed.[5]

---

[4] Section 29.33(4) provides in relevant part:

(4)   Crew Licenses. (a) Any commercial fishing licensee may use licensed crew members when fishing with or without a boat. The number of crew members engaged under a single license may not exceed 4 when fishing with nets under the ice. The department, upon proper application for crew licenses, may issue with each commercial fishing license no more than 4 crew licenses for the specific purpose of fishing with nets under the ice and the number indicated on the application for the purpose of fishing in open water. Each crew license shall bear the number of the commercial fishing license, the purpose for which intended, the year for which issued and the name of the crew member to whom the crew license is issued. The crew license permits a person to engage in commercial fishing only as a member of a crew of a commercial fisher licensed under sub. (1).

(b)   Each member of a crew engaged in the setting, lifting or pulling of nets or other devices set under authority of a commercial fishing license shall carry the crew license on his or her person while so engaged and upon demand of any conservation warden shall exhibit the license. Persons using minnow seines and dip nets used for taking smelt and minnows are exempt from this subsection.

[5] Although § 29.33(4) places certain limits on crew members holding crew licenses, this section does not require a crew member to acquire the license.

■

Consequently, Filipczak, as an employee, was improperly charged under sec. 29.33(1). The DNR's remedy in a non-tribal case would be to pursue the non-tribal commercial fishing employer. Although the DNR may lack jurisdiction over tribal employers, there exists a remedy under federal law. *See* 25 C.F.R. §§ 249.5 and 249.6 (1985).[6] Because the employee, Filip-

---

[6] 25 C.F.R. § 249.5 provides:

> No Indian shall, while exercising off-reservations treaty-secured fishing rights, permit any person 12 years of age or older other than the authorized holder of a currently valid identification card issued pursuant to this Part 249 to fish for him, assist him in fishing, or use any gear of fishing location identified as his gear or location pursuant to this Part 249.

25 C.F.R. § 249.6 provides:

> (a) Any Indian tribe with a tribal court may confer jurisdiction upon such court to punish violations by its members of this Part 249 or of the area regulations issued pursuant thereto. Jurisdiction is hereby conferred upon each Court of Indian Offenses established pursuant to Part 11 of this chapter to punish such violations by members of tribes whose reservations are under the jurisdiction of such court. Courts of Indian Fishing Offenses may be created pursuant to Part 11 of this chapter to punish such violations by members of any tribe or group of tribes for which there is otherwise no Court of Indian Offenses or tribal court with jurisdiction to enforce this Part 249. The provisions of Part 11 of this chapter shall apply to any such court with respect to the exercise of its jurisdiction to enforce this Part 249. All jurisdiction conferred by this section shall apply without regard to any territorial limitations otherwise applicable to the jurisdiction of such court.
>
> (b) Acceptance or use of an identification card issued pursuant to this Part 249 or use of any fishing gear marked or identified pursuant thereto shall constitute an acknowledgment that the fishing done under such card or with such gear is in the claimed exercise of a tribal fishing right and is subject to the jurisdiction

czak, was not required to obtain a commercial fishing license under sec. 29.33(1), we reverse and remand to the trial court and instruct that the citation be dismissed.

*By the Court.*—Judgment reversed and cause remanded with directions.

■■■■■

of the tribal court, Court of Indian Offenses, or Court of Indian Fishing Offenses. Except as may be otherwise provided by tribal regulations approved by or on behalf of the Secretary of the Interior, any person claiming to be exercising such tribal right and fishing in violation of the regulations contained in or issued under this Part 249 may be punished by a fine of not to exceed $500, imprisonment of not to exceed 6 months, or both, and shall have his tribal fishing privileges suspended for not less than 5 days for any violation of this Part 249 or of any area regulation issued pursuant thereto. The court shall impound the fishing rights identification card of any person for the period which the fishing privileges are suspended.