IN RE the MARRIAGE OF: Linda L. ABEL
(formerly Johnson), Joint Petitioner-Respondent,
v.

Leslie L. JOHNSON, Joint Petitioner-Appellant.

Court of Appeals

*No. 85–2381. Submitted on briefs July 30, 1986.—Decided
November 12, 1986.*

(Also reported in 400 N.W.2d 22.)

For the joint petitioner-appellant the cause was submitted on the briefs of *Clark Dempsey* of Whitewater.

For the joint petitioner-respondent the cause was submitted on the brief of *Sandra A. Edhlund* of *The Family Law Center, Cooper & Edhlund, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Leslie L. Johnson (Leslie) appeals the post-judgment orders of the family court modifying a divorce judgment to award child support to his former wife, Linda L. Abel (Linda) and refusing to vacate a previous order transferring physical custody of the parties' minor child, Robert, from Leslie to Linda. The principal issue on appeal is whether that portion of sec. 767.32(2), Stats., governing modification of custody orders, commonly referred to as the "*Millikin* standard" (*Millikin v. Millikin,* 115 Wis. 2d 16, 339 N.W.2d 573 (1983)), applies to transfers of physical placement under a joint custody award. We conclude the *Millikin* standard does not apply to such custody transfers. We also

conclude that the trial court's award of support was not an abuse of discretion. Therefore, we affirm.

The essential and controlling facts on this appeal are straightforward and undisputed. A judgment of divorce terminating the Johnsons' marriage was entered on December 17, 1982. Pursuant to a stipulation between the parties, the divorce judgment awarded joint custody of the minor children to both Leslie and Linda. Pursuant to this stipulation, the judgment also awarded physical custody of the parties' two minor children to Leslie with visitation rights to Linda.[1] The judgment required no support payments by either party.

Nearly three years later, Leslie and Linda entered into a written stipulation amending the judgment of divorce transferring the physical custody of Robert from Leslie to Linda. The stipulation retained physical custody of the other child with Leslie. The stipulation also reconfirmed the joint custody arrangement between the parties.[2] Judge Robert Read signed the order resulting

---

[1] This provision of the judgment provided as follows:

The parties jointly are given the care and custody of the minor children. (The court finds and both parties agree that a joint custody arrangement would be in the best interests of the children.) Physical custody of the minor children shall be with Leslie L. Johnson and visitation shall be with Linda L. Johnson at any & all reasonable times upon reasonable notice to Leslie L. Johnson.

[2] The language of the stipulation, in pertinent part, provided as follows:

"Both parties are fit and proper persons to have custody of the minor children of the parties, namely, Robert L. Johnson and Carrie A. Johnson. However, until further order of the Court, it is in the present best interests of the minor children that the joint petitioners, Leslie L. Johnson and Linda L. Abel, f/n/a Linda L. Johnson, shall have the joint care and custody of the minor children of the parties. Physical custody of Carrie A. Johnson shall be with joint petitioner, Leslie L. Johnson, and visitation shall be with joint peti-

from this stipulation. This order was entered without any formal proceedings or judicial determination that the change in Robert's physical custody was in his best interests or necessary to his best interests.

By motion dated June 7, 1985, Linda sought an order modifying the divorce judgment to provide child support from Leslie. Leslie responded by seeking an order vacating the January 3, 1985 order transferring Robert's physical custody to Linda. Leslie contended that the transfer of Robert's physical custody was premised upon an "understanding," not embodied in the parties' stipulation transferring physical custody, that Linda would not seek support. Leslie also sought vacation of the order transferring Robert's physical custody on the grounds that the *Millikin* standard forbidding a custody modification absent "substantial evidence supporting a change of custody" showing "such removal as necessary to the child's best interest," *Millikin*, 115 Wis. 2d at 23, 339 N.W.2d at 576 (quoting sec. 767.32(2), Stats.), had not been met.

The family court, Judge Dennis Flynn presiding, determined *inter alia* that the stipulated transfer of Robert's physical custody could not be legally conditioned upon the parent assuming custody forfeiting a right to support; that Leslie had failed to meet the burden established under either the "best interests of the child" standard or the higher *Millikin* standard with respect to the transfer of Robert's physical custody; and

---

tioner, Linda L. Abel, f/n/a Linda L. Johnson at any and all reasonable times upon reasonable notice to joint petitioner, Leslie L. Johnson. Physical custody of Robert L. Johnson shall be with joint petitioner, Linda L. Abel, f/n/a Linda L. Johnson, and visitation shall be with joint petitioner, Leslie L. Johnson at any and all reasonable times upon reasonable notice to joint petitioner, Linda L. Abel, f/n/a Linda L. Johnson."

that Leslie was estopped from seeking to undo his previous stipulation pursuant to *Rintelman v. Rintelman*, 118 Wis. 2d 587, 348 N.W.2d 498 (1984). Accordingly, Judge Flynn upheld the January 3, 1985 order of Judge Read transferring Robert's physical custody to Linda and awarded support to Linda. Leslie appeals both the support order and the order denying vacation of the January 3, 1985 order transferring Robert's physical custody.

## CONCEPT OF JOINT CUSTODY

The principal issue presented in this case is whether the *Millikin* standard applies to a transfer of physical placement[3] of a child under an existing joint custody arrangement. This question requires us to construe the joint custody statute and, specifically, the impact of physical placement considerations upon such custody. Before engaging in this statutory construction, however, some general observations concerning the concept of joint custody are appropriate.

Section 767.24(1)(b), Stats., provides for joint custody:

> The court may give the care and custody of such children to the parties jointly if the parties so agree and if the court finds that a joint custody arrangement would be in the best interests of the child or children. Joint custody under this paragraph means that both parties have equal rights and responsibilities to the minor child and neither party's rights are superior.

---

[3] We use the term "physical placement" instead of "physical custody" to avoid the implications that "custody" might convey to legal minds as creating something of greater right or stature. As this decision reveals, however, we see the terms as synonymous.

The concept of joint custody was first introduced to Wisconsin law in the Divorce Reform Act, ch. 105, Laws of 1977. The legislative purpose, in part, was enunciated as follows: "It is the intent of the legislature to recognize children's needs for close contact with both parents, to encourage joint parental responsibility for the welfare of minor children and to promote expanded visitation." *Id.* at sec. 1(2).

A sole legal custody award requires the family court to select one party over the other as the legal custodian. This determination, of necessity, vests the custodial party with superior rights and responsibilities to the minor child. Neither of these events or consequences occurs when a joint custody award is made. Rather, the parties by their stipulation represent to the court that, despite the breakdown of the marital relationship, they remain mutually committed to the welfare of their child. Therefore, the parties ask the approval of the court to exercise their privileges and responsibilities to the child without *the necessity* of ongoing judicial involvement. In effect, the parties seek to continue the relationship they had with the child prior to the divorce. *See* Grove, *Wisconsin's Joint Custody Statute: Does it Pass Constitutional Muster?*, 9 Milwaukee Law. 2 (No. 4, 1986). The court is not obligated to accept the joint custody proposal of the parties. Rather, the court must independently satisfy itself that the joint custody proposal serves the best interests of the child.

## SECTION 767.24(1)(b), STATS., THE JOINT CUSTODY STATUTE

With these observations concerning joint custody in mind, we now turn to the construction of sec. 767.24(1)(b), Stats., the joint custody statute, in light of physical placement considerations. Statutory construction presents a question of law. *Sprague v. Sprague*, 132 Wis. 2d 68, 71, 389 N.W.2d 823, 824 (Ct. App. 1986). When reviewing questions of law, this court owes no deference to the conclusion of the trial court. *Id.* Ordinarily, we interpret a statute on the basis of the plain meaning of the words. *State v. Filipzcak*, 132 Wis. 2d 208, 211, 390 N.W.2d 110, 111-12 (Ct. App. 1986). If the meaning of a statute is ambiguous, however, we will examine the scope, history, context, subject matter and object of the statute in order to implement the intent of the legislature. *Id.* A statute is ambiguous if reasonably well-informed individuals could construe the statute in two different ways. *Id.*

A child obviously must be physically located with either party (or a third party) at any given point in time. Yet, the joint custody statute is totally silent on the subject of physical placement. Therefore, we conclude that the statute is ambiguous as to whether judicial recognition of physical placement as a separate legal concept is required in a joint custody setting. We conclude it is not.

In *Westrate v. Westrate*, 124 Wis. 2d 244, 247, 369 N.W.2d 165, 167 (Ct. App. 1985), a sole custody case, the court construed sec. 767.24(1)(d), Stats., as not permitting an inferential separation of physical custody

from legal custody. In fact, *Westrate* pointedly notes that physical custody is not even recognized by the Family Code. *Id.*[4] *See also State v. Britzke*, 110 Wis. 2d 728, 732, 329 N.W.2d 207, 210 (1983).

The same holds true here. Section 767.24(1)(b), Stats., the joint custody statute, does not recognize physical custody. Therefore, as in *Westrate*, we hold that physical placement, as an independent legal concept, cannot be inferentially separated from joint legal custody.

One commentator has noted the statute's failure to address physical custody or placement and has similarly opined as to its legal consequence.

> While the legislature's purpose—to recognize children's need for close contact with both parents, to encourage joint parental responsibility and to promote expanded visitation—is clear enough, Wisconsin's specific definition of joint custody fails to distinguish between joint legal custody and joint physical custody. Comparing this legislative intent

---

[4] *Westrate v. Westrate*, 124 Wis. 2d 244, 369 N.W.2d 165 (Ct. App. 1985), does not expressly state whether the sole custody statute is ambiguous or unambiguous. However, by construing the legislation, the court implies that the statute is ambiguous.

We recognize that *Westrate* expressly limits the reach of its opinion to a sole legal custody award.

> Because sec. 767.24, Stats., requires legal and physical custody to be vested in the same party *when the parties do not consent to joint custody,* and because the trial court effectively divided physical custody between both parents, we reverse the judgment. [Emphasis added.]

*Id.* at 246, 369 N.W.2d at 167. We view this language as not dispositive of the question here because *Westrate* did not concern a joint custody award.

with the specific definition in the statute, it appears that the legislature is *combining the two concepts.* [Emphasis added.]

Kapner, *Joint Custody and Shared Parental Responsibility: An Examination of Approaches in Wisconsin and in Florida,* 66 Marq. L. Rev. 673, 675 (1983).

Therefore, if the family court is satisfied that the joint custody proposal of the parties serves the child's best interest, *both* parties receive the legal custody of the child with all responsibilities and privileges incidental thereto. In such a case, the court defers to the parties in matters relating to important decision making regarding the child—including physical placement. Included in the bundle of legal rights conveyed by an award of joint custody is the physical placement of the child with both parties. *See Westrate,* 124 Wis. 2d at 247, 369 N.W.2d at 167. The parties are then free to physically locate the child as they deem necessary and appropriate.

Although, as here, divorced parties may choose to further detail their joint custody stipulations with physical placement provisions,[5] we conclude that this is not essential to a valid joint custody stipulation and resultant order or judgment. If the parties are in agreement as to a joint custody arrangement, and if the family court, after full consideration as to the proposal's wisdom, concludes that such arrangement is in the best interest of the child, further official stipulation and judicial approval is not essential to the validity of those subsequent decisions collectively made by the parties

---

[5] Such documentation may be necessary in light of support considerations.

regarding their rights and responsibilities to the minor child.

Leslie argues, however, that sec. 767.32(2), Stats., the child custody modification statute, applies in a joint custody setting when physical placement of a child is transferred pursuant to agreement between the parties. Section 767.32(2), governing custody modifications, provides, in part:

> Any modification of a custody order which removes a child from the care of a parent having custody of the child shall be based on a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change in custody under s. 767.24(2).

■

Again we are presented with a matter of statutory construction—presenting a question of law. *Sprague,* 132 Wis. 2d at 71, 389 N.W.2d at 824. The statute does not expressly state whether the reference to "custody" means sole custody or joint custody. Reasonably well-informed individuals could differ as to whether the statute means one, the other, or both. Therefore, we conclude the statute is ambiguous.

The evil sought to be addressed by this statutory test is "to discourage repetitious litigation of a custody issue and to protect the children by preventing their being made pawns in a contest between the parents." *Millikin,* 115 Wis. 2d at 21, 339 N.W.2d at 575 (quoting *Delchambre v. Delchambre,* 86 Wis. 2d 538, 540, 273 N.W.2d 301, 303 (1979)). Such evil does not exist in a joint custody case because the family court has not made a prior determination granting one party superior custodial rights over the other. As noted earlier, we view a joint custody award as a continuation of the legal

relationship existing between the parties and their child prior to the divorce. The purpose sought to be served by this statutory test is to make custody changes harder to obtain. *Id.* at 22-23, 339 N.W.2d at 576. Again, because the family court does not make such a preferential selection when it awards joint custody, we do not see the *Millikin* purpose served by application of this statutory test.

The legislature's adoption of the "necessary to the child's best interest" test in custody modification cases resulted from the presumption that it was in the best interest of the child to remain in the existing custodial arrangement. *Corcoran v. Corcoran*, 109 Wis. 2d 36, 40-41, 324 N.W.2d 901, 903-04 (Ct. App. 1982). We question whether this presumption can or should apply when the parties to a joint custody award no longer find themselves in agreement regarding important decisions concerning their child. Such disagreement removes the necessary and essential philosophical and legal underpinning for the vitality of a continuing joint custody arrangement. It is in such a setting that the family court is, for the first time, called upon to make a preferential choice of one parent over the other by awarding sole legal custody. Therefore, we conclude a "removal" under the modification statute cannot occur in a joint custody case. Rather, what occurs is an initial award of sole legal custody. When making such a determination, the existing physical placement of the child is an important and relevant consideration. *See* sec. 767.24(2)(c) and (f), Stats.

In addition, the statute speaks of removal from a *parent*—not *parents*. We are aware of the general rule of

statutory construction that singular terms in a statute include the plural form of the term. Sec. 990.001(1), Stats. However, this rule of statutory construction does not apply when it would lead to a result inconsistent with the statutory intent. *White v. General Casualty Co.*, 118 Wis. 2d 433, 439, 348 N.W.2d 614, 617 (Ct. App. 1984). Such a result would follow from a pluralistic reading of this singular statute.

In this case, Linda and Leslie are battling over the physical placement of Robert: Linda contending that the custody modification order should stand; Leslie arguing that it should be vacated and physical custody of Robert returned to him. To retain a joint custody award in the face of such fundamental disagreement as to the important question of a child's physical placement is, in our judgment, pure folly. The parties now find themselves asserting adverse claims for a superior right to Robert—namely his physical placement. This competition is antithetical to the concept of joint custody.

The problem here lies in the fact that neither party has sought a termination of the joint custody award. But the vitality of the joint custody arrangement must be measured by the parties' actions—not their words. When faced with such a development, the family court should not hesitate to *sua sponte* raise the issue as to whether the joint custody award should be continued. Upon remittitur of the record in this case, the family court should feel free in its discretion and pursuant to its authority to raise this issue with the parties. The parties also should reflect upon the wisdom of retaining the joint custody arrangement in light of the fundamental disagreement which now exists as to Robert's physical placement.

We have considered the effect of *Thompson v. Thompson*, 129 Wis. 2d 348, 384 N.W.2d 713 (Ct. App. 1986), on this question. In *Thompson*, a Minnesota paternity judgment awarded joint custody to the natural parents. In the Wisconsin divorce action, the stepfather asserted custodial claims to the child as against the natural father.[6] While the Wisconsin family court eventually awarded legal custody to the natural mother and wife, the pleadings cast the custody battle between the natural father and the stepfather. The parties to the divorce action did not even participate in the appeal. Rather, the issues on appeal were raised as between the natural father and the guardian ad litem with the guardian ad litem defending his espousal of the cause of the stepfather.[7] The court of appeals held that the *Millikin* standard should have been applied by the Wisconsin divorce court when modifying the Minnesota joint custody award.

Facially, *Thompson* appears to disagree with our conclusion. *Id.* at 354-55, 384 Wis. 2d at 716-17. However, a close analysis of *Thompson* reveals that it is, in fact, in accord with our conclusions in this case. When the Minnesota paternity court made its joint custody award to the natural parents, it obviously was elevating their rights to the child over all other persons— including the stepfather who eventually sought to undo the joint custody award. Thus, when the stepfather sought to defeat the natural father's custodial rights, the *Thompson* court properly applied the higher *Millikin* standard.

---

[6] The question of the stepfather's standing to assert the custodial claim was not raised on appeal and thus not addressed by the decision.

[7] We have examined the briefs in *Thompson*.

Such is not the case here. The physical placement dispute in this case exists between the *parties to the joint custody stipulation—not between one or both of them and a third party as in Thompson.* As such, because of its curious and unusual juxtaposition of parties, *Thompson* is properly held to its unique facts.

Because the parties were free to change Robert's physical placement without the necessity of judicial approval, the order of Judge Read approving such placement change was unnecessary. Therefore, Judge Flynn's ruling upholding such change was proper.[8]

## SUPPORT

As to the support issue, Judge Flynn concluded that Judge Read's January 3, 1985 order transferring Robert's physical custody could not serve as a basis for measuring whether a change of circumstances presently existed entitling Linda to support. In effect, Judge Flynn held that a change of circumstances must be measured from the last judicial pronouncement regarding support, i.e., the judgment. We agree.

The original judgment expressly denied support to either party. The subsequent stipulation and order

---

[8] We appreciate that the use of joint custody sometimes avoids contested custody litigation in the family court. However, we do not see joint custody properly used as a camouflage for a contested custody case nor as an "escape route" to avoid litigation. While the temptation might be strong to approve such procedure in the interest of judicial economy, we do not believe that such "perverted" use of joint custody should be condoned expressly or impliedly by this court.

transferring Robert's physical placement was silent as to support. It is unclear from the record whether the parties and the family court approached the support issue as an initial determination or a modification. However, under either approach, we find no abuse of discretion. *See Ondrasek v. Ondrasek*, 126 Wis. 2d 469, 481, 377 N.W.2d 190, 195 (Ct. App. 1985). The change in Robert's placement from Leslie to Linda is a clear and obvious change in circumstances from those existing at the time of the judgment. The change in physical placement obviously impacted upon the financial needs and abilities of both parties. The family court's analysis of the evidence well supports its discretionary determination to award support and to utilize the statutory guidelines in fixing the support award.

*By the Court.*—Orders affirmed.