IN RE the PATERNITY OF S.R.N.: A.J.N., Petitioner-Respondent,†

v.

W.L.D., Respondent-Appellant.

Court of Appeals

*No. 90-1604. Submitted on briefs July 2, 1991.—Decided February 20, 1992.*

(Also reported in 481 N.W.2d 672.)

†Petition to review granted.

For the respondent-appellant the cause was submitted on the briefs of *James T. Conway* of Janesville.

For the petitioner-respondent the cause was submitted on the briefs of *George K. Steil* and *Margery M. Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville.

The cause was submitted on a brief of *Tod O. Daniel* of Janesville, guardian *ad litem* for S.R.N.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. In this appeal, we decide that sec. 767.325(1)(a), Stats., does not permit the circuit court to substantially modify its initial legal custody and physical placement order in the two years after its entry solely to

318

correct the custodial parent's unreasonable interference with physical placement of the child with the noncustodial parent. We conclude that when evidence of the custodial mother's interference with physical placement of the child with the father is removed from consideration, the guardian ad litem failed to support his motion to change custody by substantial evidence that removal of the child from the mother's care and custody was necessary because the current custodial conditions were emotionally harmful to the best interest of the child.[1] We therefore reverse the final order entered April 20, 1990 which transferred the "care, custody and control" of the child from the mother to the father. We also reverse the order entered February 17, 1989, which temporarily transferred physical custody of the child from the mother to the father.

## BACKGROUND

The underlying action is a paternity action begun by the father. The child was born June 4, 1987. On December 6, 1988, the circuit court reduced its oral order of August 9, 1988 to writing and entered its order which awarded sole legal custody of the child to the mother and granted the father visitation or periods of physical placement.[2]

---

[1]Section 767.325(1)(a), Stats., requires that the showing of necessity be made by the "party seeking the modification." We have considered the evidence presented by the father in concluding that the guardian ad litem did not make the showing required by sec. 767.325(1)(a).

[2]The parties and the circuit court gave the terms "custody" and "visitation" their pre-1987 Wis. Act 355 meanings. In its deliberations and comments the Legislative Council's Special Committee on Custody Arrangements frequently used the term "custody" to include "sole physical custody." Wisconsin cases

Motions were filed by each party to find the other in contempt of the court's oral order of August 9, 1988. On January 4, 1989, the trial court heard the father's motion filed December 21, 1988. The court found the mother in contempt of its physical placement order and sentenced her to a jail term, with the right to purge her contempt by complying with a new physical placement schedule. The mother called to the court's attention that the guardian ad litem had not been present at the hearing. The court held a further hearing on January 6 at which it appointed a new guardian ad litem, allowed the contempt finding to stand but rescinded the jail sentence and ordered the successor guardian ad litem to investigate whether the child had health problems which interfered with periods of physical placement with the father.

On January 26, 1989, the guardian ad litem informed the court by letter that he had been advised by a doctor who examined the child that there was no medical reason, nor had there been a medical reason, which would interfere with periods of physical placement of the child with her father. On February 2, 1989, the guardian ad litem moved the court to find the mother in contempt of previous physical placement orders, to impose sanctions on her, and to transfer physical custody of the child to the father. The circuit court heard his motion on February 16, 1989.

On February 17, 1989, the court entered two orders. The first order was made *nunc pro tunc* January 6, 1989, and found the mother in contempt, rescinded the sanctions imposed on her on January 4, established a new physical placement schedule, and ordered the guardian

decided pre-1987 Wis. Act 355 and decisions from other jurisdictions, use "custody" in that sense. Unless otherwise stated, "custody" and "visitation" in this opinion include their pre-1987 Wis. Act 355 meanings.

320

ad litem to "conduct an investigation into what is in the best interests of [the] minor child and report to the Court . . .." The second order was a temporary order which transferred the "care, custody and control" of the child to the father pending continuing investigation by the guardian ad litem as to the child's best interest, and a further hearing at which "custody" and "visitation" would be determined. On February 20, the sheriff successfully executed a search warrant, seized the child and placed her with her father.

On March 3, 1989, the court granted the guardian ad litem's motion to find the mother in contempt for failing to obey the custody-change order and, as a remedial sanction, suspended periods of physical placement of the child with the mother, except under supervision, subject to posting of a $2,000 cash bond. The mother posted the bond which was returned to her after entry of the final order.

On April 20, 1990, after a hearing on the issues of custody and visitation, the circuit court finalized its previous transfer of the "care, custody and control" of the child to the father, denied periods of physical placement of the child with the mother except under supervision, and ordered the mother to pay child support and reimburse the county for the guardian ad litem's costs and fees.

On January 4, 1991, we dismissed the mother's appeal from a number of the orders entered in this action as untimely but concluded that we had jurisdiction of her appeal from the final order entered April 20, 1990. That appeal brought before us all previous nonfinal orders.

## SYNOPSIS OF DECISION

Because the modification orders were entered within two years of the circuit court's initial order determining legal custody and physical placement, sec. 767.325(1)(a), Stats., governs. Section 767.325(1)(a) provides:

> *Within 2 years after initial order . . ..* [A] court may not modify any of the following orders before 2 years after the initial order is entered under s. 767.24, unless a party seeking the modification, upon petition, motion, or order to show cause shows by substantial evidence that the modification is necessary because the current custodial conditions are physically or emotionally harmful to the best interest of the child:
> 1. An order of legal custody.
> 2. An order of physical placement if the modification would substantially alter the time a parent may spend with his or her child.

Section 767.325, Stats., applies to motions, petitions or orders to show cause to modify paternity judgments. Section 767.51(6), Stats.

At the outset, we emphasize that in his motion of February 2, 1989, the guardian ad litem[3] did not seek to remove the child from the mother's care because the current custodial conditions were physically or emotionally harmful to the child's best interest. At the initial hearing on his motion, the guardian ad litem testified: "I don't have any concern at all for this child being well

---

[3]The guardian ad litem is not a party and appears as an advocate for the child. Section 767.045(4), Stats. However, we will follow the example of the parties and the trial court and refer to the guardian ad litem when we refer to an act taken by the guardian ad litem on behalf of the child.

322

cared for." The sole reason for his motion is revealed in his further testimony, that,

> It is my opinion that the best interests of this child require that [the mother] be sanctioned—because, apparently, nothing else is working—to get her attention, to get her to understand that this child is not a pawn to be used in whatever vendetta she feels toward [the father] for whatever reason.

The circuit court correctly refused to permanently transfer physical custody of the child to the father solely on the evidence that the mother had unreasonably interfered with physical placement of the child with the father. The court erroneously assumed, however, that the guardian ad litem's motion permitted the court to redetermine legal custody and physical placement. The court therefore transferred physical custody of the child to the father temporarily, ordered psychological examinations of the father, his fiancee, the mother and the maternal grandmother, and scheduled a hearing on the issues of custody and visitation. After the hearing, the court concluded that its initial order "must be modified because custody with [the mother] is emotionally harmful to the best interest of [the child]." We decide that this conclusion is not supported by substantial evidence addressed to the correct legal standard under sec. 767.325(1)(a), Stats.

The evidence presented by the guardian ad litem erroneously focused on the best-interest-of-the-child standard under sec. 767.24(5), Stats., instead of the correct necessary-to-modify standard of sec. 767.325(1)(a), Stats. Also, the evidence erroneously focused on conditions as they existed after the child was removed from the mother's care, rather than on "current custodial conditions."

The guardian ad litem did not present evidence that the mother's interference with physical placement of the child with the father was emotionally harmful to the child. A psychological examination of the child was not performed. A home study was not done. Finally, the evidence is substantial and uncontradicted that, while in the mother's care, the child was a normal, healthy, thriving child.

Therefore, we conclude that substantial evidence does not support removal of the child from the mother's care unless the custodial parent's unreasonable interference with physical placement of the child with the noncustodial parent is, of itself, substantial evidence that removal of the child from the custodial parent's care is necessary. We conclude that it is not.

### 1. Modification To Correct Mother's Interference with Physical Placement

The circuit court found that the mother unreasonably interfered with physical placement of the child with the father. We need not decide whether that finding is clearly erroneous because we conclude that a motion to substantially modify legal custody or physical placement in the two years following entry of the court's initial order may not be supported by such a finding, unless the moving party shows that such interference was physically or emotionally harmful to the best interest of the child.

The guardian ad litem argues that whether the custodial parent has unreasonably interfered with the child's continuing relationship with the noncustodial parent is a factor which the circuit court must consider in deciding a motion under sec. 767.325(1)(a), Stats., to modify legal custody or physical placement in the two

years after entry of its initial legal custody and physical placement order. We disagree.

The guardian ad litem cites sec. 767.24(5), Stats., which provides in part:

> In determining legal custody and periods of physical placement, the court shall consider all facts relevant to the best interest of the child . . .. The court shall consider the following factors in making its determination:
>
> . . ..
>
> (g) Whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

Section 767.24(5), Stats., is not expressly limited to initial judgments or orders under sec. 767.24(1), Stats. A reasonably well-informed person could conclude that because a motion under sec. 767.325(1)(a), Stats., "determin[es]" legal custody and physical placement, the circuit court shall consider the sec. 767.24(5) best-interest factors in deciding a motion thereunder. An equally well-informed person could conclude that sec. 767.325(1)(a) prohibits the circuit court from retrying the issues of legal custody and physical placement in the two years after entry of its initial legal custody and physical placement order and, therefore, the best-interest factors listed in sec. 767.24(5) are inapplicable to a motion under sec. 767.325(1)(a). An ambiguity is therefore created by the interaction of secs. 767.24(5) and 767.325(1)(a). *See Morrissette v. DeZonia,* 63 Wis. 2d 429, 436, 217 N.W.2d 377, 381 (1974) (ambiguity may be created by the interaction of separate statutes). Construction of sec. 767.325(1)(a) is necessary.

■
Our purpose in construing a statute is to determine and give effect to the legislature's intent. *State v.*

*Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984). In the usual course, we would begin our search by examining the language of the statute. *Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 40, 435 N.W.2d 234, 238 (1989). Here, however, sec. 767.325(1)(a) can be better understood by first considering the language of the statute it replaced—sec. 767.32(2), Stats. (1985–86)—and decisions interpreting that provision.

Section 767.32(2), Stats. (1985–86) provided in part as follows:

> Any modification of a custody order which removes a child from the care of a parent having custody of the child shall be based on a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change in custody under s. 767.24(2) [now sec. 767.24(5)].

Thus, under sec. 767.32(2), the circuit court was required to consider the sec. 767.24(5), Stats., best-interest factors in deciding a modification motion which would remove a child from the custodial parent's care. However, the court in *Millikin v. Millikin,* 115 Wis. 2d 16, 23, 339 N.W.2d 573, 576 (1983), clarified that a finding of best interest was not enough under the statute to support an order removing a child from the care of the custodial parent. The court said that "[a] simple showing that the best interest of the child would support a change in custody is not enough; there must be a showing by substantial evidence that 'removal is necessary.' " *Id.* (quoting *Corcoran v. Corcoran,* 109 Wis. 2d 36, 42, 324 N.W.2d 901, 904 (Ct. App. 1982)). As to the applicability of the best-interest factors, the court said that "in deciding whether a change of custody is necessary, the court will review all relevant factors as listed in sec. 767.24(2) [now sec. 767.24(5)]. However, we emphasize that in

reviewing the sec. 767.24(2) factors the court's focus must be on the necessity for removal." *Id.*

In *Gould v. Gould,* 116 Wis. 2d 493, 498-500, 342 N.W.2d 426, 430-31 (1984), the court held that the circuit court committed reversible error when it failed to apply to a removal motion the "necessary" standard embodied in sec. 767.32(2), Stats., but focused on the best interest of the child as if the motion initiated an initial custody proceeding. *See also In re V.H.,* 412 N.W.2d 389, 391 (Minn. Ct. App. 1987) (reversible error for court to modify custody decree by applying criteria for initial award).

The legislative history of sec. 767.325, Stats., shows that when the legislature enacted the statute, it was very aware of how the Wisconsin court had construed sec. 767.32(2), Stats. Section 767.325 was created by 1987 Wis. Act 355. The bill which became the Act was the product of the Legislative Council's Special Committee on Custody Arrangements ("Committee"). Committee Comment, sec. 767.24, Wis. Stat. Ann. (West Supp. 1991). The Committee was directed by 1983 Assembly Joint Resolution 106 to study, among other things, existing laws relating to child custody determinations. *Id.* In response to that directive, the Committee considered the holding of the *Millikin* court. In its comments to sec. 767.325(1)(a), the Committee stated:

> Current s. 767.32(2) requires the party seeking the modification [of child custody] to show, by substantial evidence, that a change in custody is necessary to the best interest of the child. In *Millikin v. Millikin,* 115 Wis. 2d 16, 23-24 (1983), the Wisconsin supreme court interpreted the term "necessary" to mean that "the current custodial conditions are *harmful* in some way to the best interest of the child" (emphasis added [by Committee]).

Wisconsin Stat. Ann. sec. 767.325(1)(a) (West Supp. 1991).

The Committee found that the then-current laws and practices relating to child custody determinations "[p]rovide for an extremely high standard for postjudgment changes in custody by requiring that the current custodial conditions of the child be harmful to the child's best interest before a change may be ordered." Committee Comment, Finding No. 4, Wis. Stat. Ann. sec. 767.24 (West Supp. 1991). Its minutes show that the Committee concluded that the *Millikin*-declared standard, as applied to *all* custody and physical placement modifications, made modification too difficult. *See* Committee Minutes, Wisconsin Legislative Council, Summaries of Committee Meetings, Vol. 1, *Custody Arrangements* (1983-85): October 15, 1984 at 4; November 12, 1984 at 5; April 22, 1985 at 7; June 3, 1985 at 8-9; and June 24, 1985 at 17-18. At the latter meeting, the Committee rejected a proposal that the *Millikin*-declared standard be retained for all modifications of sole custody awards.

The Committee recommended what is now para. (b) of sec. 767.325(1), Stats., as a general standard for modification of legal custody and physical placement orders.[4] As to sole legal custody, however, the Committee recommended the following: "A court may not modify an order for sole legal custody under s. 767.24 before 2 years after

[4]At its August 1, 1985 meeting, the Legislative Council voted to introduce the Committee's proposal to the legislature. General Report of the Legislative Council to the Legislature at 33 (1985). The Committee's proposal was introduced in the legislature on September 20, 1985, as 1985 Assembly Bill 474. Wisconsin Legislative Council, Report No. 13 to the 1985 Legislature, *Legislation on Custody Arrangements* (1985 A.B. 474) (Sept. 24, 1985). The proposal was reintroduced in the 1987 legislature as 1987 Assembly Bill 205.

the order is entered, unless a party seeking the modification, upon motion, shows that physical or emotional harm to the child will result if modification is not permitted." 1987 A.B. 205, sec. 46, 767.325(1)(c).

The Committee proposed to change the *Millikin*-declared standard in several important respects as applied to modification motions in the two years following entry of an initial order. First, the new standard would have applied only to motions to modify an order for sole legal custody. Second, the recommended provision eliminated the requirement of sec. 767.32(2), Stats. (1985–86) that the party seeking modification show by "substantial evidence" that removal of the child from the care of the parent having custody is "necessary." Finally, the proposed language would have required the circuit court to examine future custodial conditions rather than current custodial conditions.

The legislature rejected the Committee's recommendation as to the pre-two year standard. The legislature adopted Assembly Amendment 1 to 1987 A.B. 205 which substituted what is now sec. 767.325(1)(a), Stats., for the Committee's language.

A comparison of the language of sec. 767.325(1)(a), Stats., with the language of sec. 767.32(2), Stats. (1985–86) shows that the legislature intended to retain the "necessary" standard for motions substantially altering legal custody or physical placement in the first two years after entry of the circuit court's initial order. However, it is evident that, in two respects, the legislature was not satisfied with the necessary-to-remove standard of sec. 767.32(2).

First, the legislature found the *Millikin* court's definition of "necessary" too broad. The *Millikin* court defined "necessary," as used in sec. 767.32(2), Stats. (1985–86), "as implying that the change of custody itself

329

is needed because the current custodial conditions are harmful *in some way* to the best interest of the child." 115 Wis. 2d at 23, 339 N.W.2d at 576 (emphasis added). Second, sec. 767.32(2) required the circuit court to consider the best-interest factors listed in sec. 767.24(2), Stats., [now sec. 767.24(5), Stats.,] in deciding a modification motion which removed the child from the care of the parent having physical custody. The legislature corrected the two defects which it found in the necessary-to-remove standard by redefining "necessary" and deleting from sec. 767.325(1)(a), Stats., the requirement that the circuit court consider the best-interest factors listed in sec. 767.24(5) in deciding modification motions brought within two years of the original order. As redefined, "necessary" requires a finding that a change of custody or physical placement is needed because the current custodial conditions are *physically or emotionally* harmful to the best interest of the child.

With this background, we look more closely at the language of sec. 767.325, Stats. Except for a modification motion made in the initial two-year period, sec. 767.325 applies the best-interest standard to modification motions. The legislature's omission of a general best-interest standard from sec. 767.325(1)(a), Stats., evinces its intent that after the circuit court's initial determination of legal custody and physical placement, there shall be a two-year period of finality during which legal custody and physical placement may not be substantially modified, unless necessary because custodial conditions are physically or emotionally harmful to the child's best interest.[5]

---

[5]We emphasize that our holding applies only to a "substantial" modification of an initial order. The title to sec. 767.325(1), Stats., is "Substantial Modifications." "Although the title is not part of the statute it may be persuasive of the interpretation to be

330

Our conclusion that the legislature intended that there be a two-year period of finality after entry of an initial legal custody or physical placement order is supported by the trend in Wisconsin and elsewhere to make modification of custody and physical placement more difficult, especially in the period in which the children and parents must adjust to the new family situation. A member of the Committee, Professor Martha Fineman, noted that this was a nationwide trend and was reflected in the Uniform Marriage and Divorce Act.[6] Committee Minutes, June 24, 1985 at 18.

Enactments of the legislature reflect the trend to make modifications of legal custody and physical placement more difficult. These enactments were reviewed extensively in *Millikin,* 115 Wis. 2d at 20-23, 339 N.W.2d at 574-76, and *Corcoran v. Corcoran,* 109 Wis. 2d 36, 38-42, 324 N.W.2d 901, 902-04. In *Corcoran,* we said that the requirement of sec. 767.32(2), Stats., that the party seeking a change of custody show by "substantial evidence" that modification was necessary evinced a

given the statute." *Pure Milk Prods. Coop. v. National Farmers Org.,* 64 Wis. 2d 241, 253, 219 N.W.2d 564, 571 (1974). As noted, the circuit court may at any time modify an order of physical placement which does not substantially alter periods of physical placement if the court finds that such modification is in the child's best interest. Section 767.325(3), Stats.

[6]Most experts believe that insuring a custody decree's finality is more important than determining which parent should be the custodian. *See* Andrew S. Watson, M.D., *The Children of Armageddon: Problems of Custody Following Divorce,* 21 Syracuse L. Rev. 55 (1969). One commentator suggests that *all* motions for modification within two years of the initial custody decree should be prohibited. C. Gail Vasterling, Note, *Child Custody Modification Under the Uniform Marriage and Divorce Act: A Statute to End the Tug-of-War?* 67 Wash. U.L.Q. 923, 945 (1989).

legislative intent to discourage repetitious litigation of custody issues and to protect the children from becoming pawns in a contest between the parents. *Corcoran,* 109 Wis. 2d at 39, 42, 324 N.W.2d at 902, 904. In *Millikin,* the court approved our interpretation of the legislative history behind sec. 767.32(2). 115 Wis. 2d at 23, 339 N.W.2d at 576. *See also Herrell v. Herrell,* 144 Wis. 2d 479, 487-88, 424 N.W.2d 403, 407 (1988) ("The legislature requires the higher standard for modification of custody than for the original award of custody to promote the stability of the child's environment after the divorce, to encourage the private resolution of domestic disputes, and to minimize custody litigation after divorce.") The latter holding applies equally to custody disputes in paternity actions.

In sec. 767.325, Stats., the legislature, in one respect, continued the trend toward making custody and physical placement modification more difficult and, in another respect, backed away from the trend. After the two-year period of finality, a court, under sec. 767.325(1)(b), Stats., may modify an order of legal custody or substantially alter physical placement upon a showing less arduous than required under *Millikin.* Substantial modification of the initial legal custody order or physical placement order in the two years after its entry is a different matter. Not only is the *Millikin*-declared standard preserved, but modification is made more difficult by requiring a showing that current custodial conditions are physically or emotionally harmful to the best interest of the child.

We conclude that the legislative history of sec. 767.325(1)(a), Stats., and its predecessor, sec. 767.32(2), Stats., shows that the legislature intended to provide a "time-out" or "truce" period of two years during which

the child and the parents can adjust to the new family situation. It would be inconsistent with that intent to permit the noncustodial parent having periods of physical placement to retry legal custody and physical placement whenever a physical placement dispute arises. During the two-year adjustment period, interference by the custodial parent with the child's continuing relationship with the noncustodial parent which does not make removal from the care of the custodial parent necessary must be corrected through mediation under sec. 767.11(5), Stats., or, in the extreme case, through sanctions under ch. 785, Stats.[7]

We recognize "that it is the public policy of this state that unless there is a specific reason to the contrary it is in the best interest of a minor child to have frequent associations and a continuing relationship with both parents." Section 1, 1987 Wis. Act 355. However, this policy must be reconciled with the legislature's expressed intent in sec. 767.325(1)(a), Stats., that there be a two-year period of finality and stability following an initial determination of legal custody and physical placement.

---

[7]The courts of other states which have adopted statutes similar to sec. 767.325(1)(a), Stats., generally based on sec. 409(a) of the Uniform Marriage and Divorce Act, have concluded that interference with visitation is insufficient by itself to warrant a change of custody. *See In re Fox,* 548 N.E.2d 71, 76 (Ill. App. Ct. 1989) ("[A] change of custody is an improper remedy to punish a custodial parent's contumacious interference with visitation rights"); *In re Dusing,* 654 S.W.2d 938, 943 (Mo. App. 1983) ("The custody of children should not be modified as a punishment for a parent"); *Ashlock v. District Court,* 717 P.2d 483, 485 (Colo. 1986) ("A change in custody may not be ordered to punish a custodial parent for removing a child from the jurisdiction of the court or for secreting the child to prevent visitation by the other parent").

We conclude that sec. 767.325(1)(a), Stats., prohibited the circuit court from changing legal custody and primary physical placement from the mother to the father solely to correct the mother's unreasonable interference with physical placement of the child with the father.

## 2. Substantiality of Other Evidence.

As the moving party, the guardian ad litem had the burden to show by "substantial evidence" that removal of the child from the mother's care and custody was "necessary." *Corcoran,* 109 Wis. 2d at 42, 324 N.W.2d at 904. The circuit court implicitly found that the guardian ad litem met this burden of proof when the court concluded that its initial order "must be modified because custody with [the mother] is emotionally harmful to the best interest of [the child]." We conclude, however, that when the mother's interference with physical placement is removed from consideration, the guardian ad litem failed to show by substantial evidence that it was necessary to remove the child from the mother's care.

We first consider the standard by which we review the circuit court's conclusion. We must accept the circuit court's findings of fact if they are not clearly erroneous. Section 805.17(2), Stats. However, whether the facts support that a change of legal custody and physical placement is "necessary" is a legal conclusion. *Millikin,* 115 Wis. 2d at 25 n. 3, 339 N.W.2d at 577 n. 3. Whether the circuit court erred in modifying the initial legal custody and physical placement order is a question of law that we independently review. *Poeschel v. Poeschel,* 115 Wis. 2d 570, 571, 341 N.W.2d 407, 407 (Ct. App. 1983). Whether the guardian ad litem presented sufficient evi-

dence to meet his burden of proof is a question of law which we may review. *In re Schneider,* 150 Wis. 2d 286, 292, 441 N.W.2d 335, 338 (Ct. App. 1989). Also, whether evidence is "substantial" is a question of law. *Chmielewski v. Aetna Casualty and Sur. Co.,* 591 A.2d 101, 112 (Conn. 1991).

We next consider the meaning of "substantial evidence" and "necessary," as used in sec. 767.325(1)(a), Stats. In *Corcoran,* 109 Wis. 2d at 43, 324 N.W.2d at 904, we said: " 'Substantial evidence' is required to warrant a change of custody. 'Substantial' is defined in *Webster's Third New International Dictionary* (1976) as 'considerable in amount, value or worth.' " We find nothing in the language of sec. 767.325(1)(a), Stats., or its legislative history, which suggests that "substantial," as used therein, has a different meaning.

In *Millikin,* the court said that it could not "define with precision the word 'necessary' for purposes of a change in custody determination . . .." 115 Wis. 2d at 23, 339 N.W.2d at 576. Nor can we define the word with precision. The *Millikin* court said: "[T]he 'necessary' standard has a higher threshold than a simple showing of 'best interest,' but a lower threshold than 'essential.' " 115 Wis. 2d at 23, 339 N.W.2d at 576. The "necessary" standard of former sec. 767.32(2), Stats., was narrowed in sec. 767.325(1)(a), Stats., in that the only custodial conditions which the circuit court may consider in deciding a modification motion thereunder are those which may be physically or emotionally harmful to the best interest of the child.

While the "necessary" standard has a lower threshold than "essential," it has a sense of inevitability and immediacy. *Webster's Third New International Dictionary* (1976) defines "necessary" to include "that

335

[which] must be by reason of the nature of things." Illustrations of the use of the word include "a ['necessary'] conclusion—opposed to *contingent.*" (Emphasis in original.) Thus, the standard is not satisfied by speculative evidence such as that presented here that emotional harm to the child "could" or "might" result from current custodial conditions.

We next consider whether the facts fulfill the standard of sec. 767.325(1)(a), Stats., as we have described it. This is a question of law. *DOR v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd.,* 447 U.S. 207 (1980).

(a) *Incorrect Best-Interest Standard.*

The circuit court erroneously focused on the best interest of the child as if this were an initial legal custody and physical placement proceeding under sec. 767.24, Stats. The court stated that in reaching its conclusion that its initial order must be modified, "the Court considered the factors in § 767.24(5), Stats . . .." The court made numerous best-interest findings which are not appropriate to the "necessary" standard of sec. 767.325(1)(a), Stats.: the father wishes custody of the child and is a proper and qualified parent; the child has demonstrated a desire to live with the father; the child does not interact well with the mother and her significant others; the child has adjusted well to her new residential situation; the child interacts appropriately with her father and his fiancee; the child's emotional and social well-being has improved through living with the father; the father has been able to provide adequate, acceptable day care which has materially assisted the child's socialization and emotional development; and the

336

mother and the maternal grandmother have unreasonably interfered with physical placement with the father.

The circuit court erroneously considered that the guardian ad litem's motion empowered it to redetermine custody and visitation. At the February 16, 1989 hearing on the guardian ad litem's motion, the circuit court orally ordered a hearing on "what's in the best interests of the child at this time." Throughout the proceedings, the circuit court continued to have this erroneous perception of the correct standard to apply to the modification motion. At the October 10, 1989 hearing on the mother's reconsideration motions, the trial court stated:

> I have ordered the parties to be interviewed by the counseling service and they are to make recommendations to the court, and then we would have a hearing on that, and *the court would determine the fitness of the parties respectively and what's in the best interests of the child,* award custody to one party or the other, and set up a visitation schedule, and that's it. [Emphasis added.]

At the March 19, 1990 continued hearing on the guardian ad litem's motion, the circuit court admonished the mother's counsel that:"*[U]nless you are going to elicit testimony which bears on the best interests of this child and the placement of that child at this time,* then I am simply going to dismiss the witness from the witness chair . . . and I'm going to decide the case." (Emphasis added.)

The guardian ad litem shared the circuit court's understanding that the purpose of the "further proceedings" was to redetermine custody and visitation by considering the factors listed in sec. 767.24(5), Stats. At the conclusion of the "further proceedings" hearing, the mother's counsel asked: "Exactly what section or what statute are we under . . . for these particular rights?"

The guardian ad litem responded: "767.24(5) are the factors." He further stated: "The factors for a court to determine are listed under subsection (5) [of sec. 767.24]."

We next consider whether the circuit court erred in focusing on conditions as they existed after the child was removed from the mother's care.

(b) *"Current Custodial Conditions."*

We conclude that "current custodial conditions" has the same meaning as "present environment," which the Uniform Marriage and Divorce Act, sec. 409(a), sets as the temporal period to consider in determining whether a modification motion may be made in the two-year period after an initial custody order. "Current" is synonymous with "present." J.I. Rodale, *The Synonym Finder* at 251 (1978).

Evidence of conditions which existed and events which occurred after the child was removed from the mother's care, or speculation as to the effect upon the child if restored to the mother's care, were not relevant to the issue of whether the "current custodial conditions" were emotionally harmful to the best interest of the child. Thus, the circuit court abused its discretion to the extent that it based the exercise of its discretion on the testimony of the child's subsequent day-caretakers; the testimony of the father, his fiancee and the father's parents as to the child's behavior after periods of physical placement with the mother; and the psychological evidence that certain aspects of the mother's personality "could" or "might" interfere with the child's development.

In *Gould,* the court held that the trial court abused its discretion when it changed physical custody of a child

338

because it believed that the mother's extramarital relationship might be harmful in the future. 116 Wis. 2d at 501–02, 342 N.W.2d at 431. The court said that under the "current custodial conditions" standard, "this belief is not sufficient to constitute a finding that the change of custody is necessary now. Any harm was speculative and in the future." *Id.* at 502, 342 N.W.2d at 431.

We conclude that the circuit court abused its discretion when it exercised its discretion on the basis of evidence not related to the custodial conditions which existed when the child was in the mother's care.

(c) *Evidence of Emotional Harm to the Child.*

Neither the guardian ad litem nor the father presented any evidence that the child had suffered any emotional harm while in the mother's care. A psychological examination of the child was not conducted, although requested by the mother. The circuit court left it to the discretion of the guardian ad litem to arrange such an examination. No home study was made; this too was left to the guardian ad litem's discretion. The fact that he did not exercise his discretion in either respect confirms our conclusion that he did not consider that the mother's care was emotionally harmful to the best interest of the child.

As noted, the court in *Gould,* 116 Wis. 2d at 503, 342 N.W.2d at 432, held that the circuit court abused its discretion when it transferred custody of the child because of the mother's conduct without finding any connection between that conduct and "any present demonstrable harm to the child's best interest." *Gould* was decided under sec. 767.32(2), Stats., but we conclude that its holding is equally applicable to a motion to remove a child from the custodial parent's care under sec. 767.325(1)(a), Stats. Section 767.32(2) required that

the circuit court find that removal is "necessary"; section 767.325(1)(a) makes the same requirement.

The circuit court made a number of findings unrelated to any present demonstrable emotional harm to the best interests of the child. Such findings will not support a custody transfer. *Gould,* 116 Wis. 2d at 503, 342 N.W.2d at 432. Some of these we have already discussed in another context. Others include the following: the mother's refusal to consent to release of the results of a proposed psychiatric examination; the mother's "irrational response" to court orders; the maternal grandmother's refusal to submit to psychological and psychiatric testing; the maternal grandmother's courtroom demeanor and reaction to court orders; "past contemptuous actions and reactions" of the mother and the maternal grandmother; and the father's obedience to court orders.

Contrary to the circuit court's conclusion, the overwhelming, uncontradicted evidence shows that the child was not suffering emotional harm while in the mother's care. In fact, the evidence shows that the child was thriving. The child was seen regularly by a pediatrician from July 3, 1987 to June 28, 1989. The following are excerpts from the records of the Riverview Clinic, Ltd.: October 6, 1987: "Thriving 4-month-old"; April 1, 1988: "Thriving 10-month-old"; June 1, 1988: "Alert, vigorous, and healthy appearing little girl." "[C]ertainly no concerns about her overall development." October 7, 1988: "Alert and very healthy . . ."; January 19, 1989: "Alert, very healthy appearing youngster. Growth is excellent. . . . ASSESSMENT: Thriving 20-month-old."

On June 1, 1988, Dr. Patrick Meyer, M.D., advised the then guardian ad litem that the child was "doing extremely well." On July 26, 1988, the original guardian

ad litem advised the circuit court: "[The mother] has been the sole caretaker of the minor child since her birth. I am satisfied that she has done a capable job of raising the minor child . . .."

In its order entered December 6, 1988, the trial court found: "It is in the present best interest of [the child] that the [mother] shall have sole legal custody of the minor child." No evidence was presented of a changed circumstance which would require a contrary conclusion, except the mother's interference with physical placement of the child with the father.

Immediately after his appointment, the successor guardian ad litem investigated the health of the child. At the first hearing on his motion, the guardian ad litem testified: "Judge, I saw the child. There's nothing wrong with that child." He also advised the circuit court by letter on January 26, 1989, that he had observed the child at the doctor's office with the father and mother and that, "The child related very well with both parties and seemed very comfortable with both parties."

We conclude that the evidence does not support the circuit court's conclusion that it was necessary to modify its initial order because current custodial conditions were emotionally harmful to the best interest of the child.

(d) *Other Findings and Conclusions of Circuit Court.*

We have reviewed the circuit court's findings and conclusions and the evidence in support thereof. In view of the overwhelming evidence that the child was thriving in the mother's care, we consider that it is necessary to discuss the remaining evidence only briefly.

The psychological evidence is of no weight because it was presented to compare the parenting fitness of the father and his fiancee with the parenting fitness of the

mother, rather than to determine whether the mother's mental and emotional health posed a threat of emotional harm to the child's best interest.

The evidence of the interaction of the child with her mother and the mother's significant others dealt with a condition arising after removal of the child from the mother's care and not with a "current custodial condition[]."

The facts that the mother's parents have divorced, and that the child lives in the mother's extended family could not be considered by the circuit court in exercising its discretion. Findings of dysfunction from such facts have implications in today's society too far-reaching to be seriously considered.

In view of the pediatrician's health care records of the child, no inference can be drawn from the child's conduct after being removed from the mother's care that she was an abused child while in the mother's custody.[8]

(e) *Summary.*

■■■

We conclude that the guardian ad litem's motion was filed and decided on the erroneous assumption that the motion empowered the circuit court to redetermine the question of which parent would make the better caretaker. The circuit court's conclusion that its initial order "must be modified" because custody with the

---

[8]The type of behavior observed in the child has been empirically linked to the separation of young children from established attachment figures. Joan G. Wexler, *Rethinking the Modification of Child Custody Decrees,* 94 Yale L.J. 757, 800 and n. 165 (1985). "[A] child old enough to have become attached to a primary custodian (seven or eight months), but not old enough (under three years) to sustain an attachment over a period of absence, is substantially stressed by separations." *Id.* at 801 n. 170 (citing A. Clarke-Stewart, Child Care In the Family at 29–32 (1977)).

mother "is" emotionally harmful to the best interest of the child is not supported by substantial evidence.

We further conclude that the legislative history of sec. 767.325(1)(a), Stats., shows that the legislature intended that in the two-year period of finality and stability, the courts are not to be battlefields where wounded parents turn their children as weapons against one another. The reasons for judicial intervention in the established custodial arrangement during the two-year truce must be compelling. That was not the case here.

### 3. Validity of Temporary Order

We conclude that the validity of the February 17, 1989 order is not a moot issue. The validity of the order may have a practical effect upon the parties and a definitive decision will provide guidance for trial courts. *State ex rel. La Crosse Tribune v. La Crosse County Circuit Court,* 115 Wis. 2d 220, 228–29, 340 N.W.2d 460, 464 (1983).

The guardian ad litem argues that the sec. 767.325(1)(a), Stats., standard does not apply to a temporary change of custody pending a "full custody" hearing. We disagree. A standardless temporary change of custody frustrates the legislative purpose of sec. 767.325(1)(a), Stats., to maximize the finality of an initial custodial arrangement. Here, the child was removed from the mother's custody on February 20, 1989. The final order was entered April 20, 1990, fourteen months later. "Temporary" as applied to the circuit court's order of February 17, 1989, is a tragic euphemism.

We conclude that the circuit court abused its discretion in removing the child from the mother's care pending a hearing on the guardian ad litem's motion. We do not hold that a temporary transfer of primary physical

placement pending a hearing on a modification motion under sec. 767.325(1)(a), Stats., is always an abuse of discretion. We note, however, that sec. 767.325(4), Stats., may be invoked to deny physical placement with a parent if the child's physical, mental or emotional health is endangered. We also note that custody of a child in need of protection or services may be assumed by the juvenile court under sec. 48.13, Stats.

### 4. Assessment of Costs

We conclude that the mother's counsel filed a scurrilous and totally inappropriate brief and therefore assess the costs of the guardian ad litem and the father against counsel, personally.

*By the Court.*—Orders reversed. Costs awarded to the guardian ad litem and the father to be paid personally by mother's counsel.