# IN THE COURT OF APPEALS OF IOWA

No. 20-0764
Filed February 17, 2021

**LOWE'S HOME CENTERS, LLC,**
    Plaintiff-Appellant,

**vs.**

**IOWA PROPERTY ASSESSMENT APPEAL BOARD,**
    Defendant-Appellee,

**and**

**JOHNSON COUNTY BOARD OF REVIEW,**
    Intervenor.
_____

        Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.


        A large home improvement retailer appeals a district court order affirming

the Property Assessment Appeal Board's valuation of one of its commercial

properties.  **AFFIRMED.**


        Matthew M. Craft and Erich D. Priebe of Dutton, Daniels, Hines, Kalkhoff,

Cook & Swanson, P.L.C., Waterloo, for appellant.

        Jessica Braunschweig-Norris and Bradley O. Hopkins, Des Moines, for

appellee.


        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

The taxpayer, Lowe's Home Centers, LLC, appeals a judicial-review order affirming the Property Assessment Appeal Board's (PAAB) valuation of its Coralville property at $10,940,000. Lowe's argues the PAAB violated Iowa law by adopting an appraisal that valued the property according to its "current use," rather than its fair market value. Because the PAAB's determination of value adhered to the governing rule that tax assessors should value property based on its "present use," we affirm the district court's order.

## I. Facts and Prior Proceedings

Lowe's owns and operates a 131,569-square-foot big-box home improvement store in Coralville. The store occupies 21.78 acres of commercial land in a developing area. Other improvements include a large outdoor sales and garden area and concrete pavement. The Johnson County Assessor's 2017 tax assessment valued Lowe's improved property at $11,865,600. Lowe's challenged that assessment before the Johnson County Board of Review, claiming the valuation was excessive. *See* Iowa Code § 441.37(1)(a)(1)(b) (2017). Unsuccessful before the county, Lowe's appealed to the PAAB.

At the July 2018 contested hearing, the PAAB heard evidence from two expert appraisers: Laurence Allen for Lowe's and Russ Manternach for the board. Each asserted his appraisal reflected "the fee simple market value of the subject property." In Allen's view, the proper method for determining the fee simple value was to assess the property as if it was vacant.[1] To estimate the fee simple value,

---

[1] Before the district court, Lowe's argued the property needed to be valued as vacant because the property would transfer in fee simple, free and clear of

Allen used a sales-comparison approach and an income approach. Under the first approach, he compared sale prices of seven large home improvement stores around the Midwest that were similar in size, design, and use to the Lowe's property.[2] Each store was vacant for some time before it sold. Likewise, Allen considered several big-box rent comparables under his income approach. Because his comparables had tenants in place, he inflated the capitalization rate to "reflect the anticipated loss of income from the tenant in place . . . and the cost of finding a new tenant." Relying more on his comparable-sales analysis, Allen valued the Lowe's property at $5,200,000.

By contrast, Manternach used three valuation methods: the sales-comparison, income, and cost approaches. Assuming the Lowe's property had "stable occupancy" and "stabilized market rent," rather than being vacant, Manternach valued the property at $10,940,000. Unlike Allen's sales comparisons, Manternach compared several smaller properties in Iowa, including four former grocery stores. He also differed from Allen in finding "that the larger metropolitan areas in Iowa have seen 'very low' capitalization rates." Opting for the lower rate, Manternach testified "he was not assuming the subject property was dark or vacant, but rather that it [was] occupied" in his valuation.

Weighing the experts' opinions, the PAAB found "issues with the quality and reliability of sales each appraiser used in his analysis." Yet the agency determined

---

encumbrances. For determining the fee simple market value, we held in *I.C.M. Realty v. Woodward*, 433 N.W.2d 760, 762 (Iowa Ct. App. 1988), that "the proper measure of value is what the property would bring if sold in fee simple free and clear of any leases." The district court rejected Lowe's vacancy claim, citing the principle that "fee simple market valuation must reflect current conditions."

[2] Allen even compared some former Lowe's and Home Depot stores.

that "the problems with Manternach's sales and his adjustments [were] less severe than the problems with Allen's sales." Finding Manternach's appraisal more persuasive, the PAAB adopted his $10,940,000 valuation. The PAAB reasoned: "We can question the support for and degree of some of Manternach's adjustments, but we must also recognize that Allen failed entirely to make adjustments that were necessary to valuing the fee simple interest of the subject property in its current use."

Lowe's then sought judicial review in the district court, claiming the PAAB erred in adopting an appraisal that did not value the property at its fee simple market value.[3] The court affirmed the PAAB's decision, concluding (1) fee simple did not mean vacant; (2) "market value" and "current use" were not mutually exclusive; and (3) consideration of "current use" did not violate Iowa law.

Lowe's now appeals.

## II. Scope and Standards of Review

We review the PAAB's decision for correction of errors at law. Iowa Code § 441.39 (2019). Because the district court affirmed the agency on judicial review, "we apply the standards of chapter 17A to determine if we reach the same conclusion as the district court." *Wendling Quarries, Inc. v. Prop. Assessment Appeal Bd.*, 865 N.W.2d 635, 638 (Iowa Ct. App. 2015); *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006) ("When a district court exercises its authority on judicial review, it acts in an appellate capacity to correct any errors of

---

[3] After Lowe's petitioned for judicial review, the Johnson County Board of Review intervened as a party under Iowa Rule of Civil Procedure 1.407(1)(a). The board filed a waiver of brief on appeal, joining the PAAB's arguments.

law by the agency."). If our conclusions are the same, we affirm. *Winnebago*, 727 N.W.2d at 571. "If the agency's action was based on an erroneous interpretation of a provision of law whose interpretation has not been clearly vested in the agency, we shall reverse, modify or grant other appropriate relief from the agency action." *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 260 (Iowa 2010) (citing Iowa Code § 17A.19(10)(c)).

### III. "Current Use" Analysis

Lowe's claims the PAAB's ruling adopting Manternach's appraisal that reflected the property's "current use" violated "the standards set by Iowa law." To assess Lowe's argument, we start with an overview of the legal principles governing property tax valuations. Iowa Code section 441.21(1) requires all taxable property to be assessed "at its actual value," meaning its "fair and reasonable market value." A property's market value is "the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property." Iowa Code § 441.21(1)(b)(1).

To challenge an assessment, a taxpayer may file a protest, alleging "the property [was] assessed for more than the value authorized by law." *Id.* § 441.37(1)(a)(1)(b). In this context, the taxpayer bears the burden of proving by a preponderance of the evidence that the assessed amount exceeded the property's market value. *Id.* § 441.21(3)(b)(1); *Compiano v. Bd. of Rev.*, 771

N.W.2d 392, 396 (Iowa 2009).[4]  In offering proof before the PAAB or district court, the taxpayer "must use the assessment methods as prescribed by the law."  *Ross v. Bd. of Rev.*, 417 N.W.2d 462, 465 (Iowa 1988).

Section 441.21 provides two approaches for assessing a property's market value—the comparable-sales approach and the other-factors approach.  *Equitable Life Ins. Co. v. Bd. of Rev.*, 281 N.W.2d 821, 823 (Iowa 1979).  The comparable-sales approach is the "preferred method" of valuation.  *Wellmark, Inc. v. Cnty. Bd. of Rev.*, 875 N.W.2d 667, 679 (Iowa 2015); *see Boekeloo v. Bd. of Rev.*, 529 N.W.2d 275, 277 (Iowa 1995).  This means "when adequate evidence of comparable sales is available," the assessor must consider that evidence.  *Compiano*, 771 N.W.2d at 398; Iowa Code § 441.21(1)(b)(1) ("Sale prices of the property or comparable property in normal transactions reflecting market value . . . *shall* be taken into consideration in arriving at its market value." (emphasis added)).

But what if sale prices of the property or comparable properties are unavailable?  Section 441.21(2) provides the alternative approach:

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using . . . all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

---

[4] Under Iowa Code section 441.21(3), the taxpayer can shift the burden to the board of review to uphold the assessed value, if "the [taxpayer] offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor."  Lowe's offered evidence from only one witness, so it failed to shift the burden.  Because Lowe's retained the burden of proof, it had to establish (1) the valuation was excessive and (2) the correct valuation.  *Soifer v. Floyd Cnty. Bd. of Rev.*, 759 N.W.2d 775, 780 (Iowa 2009).

Based on this later provision, our supreme court established a general rule, stating the other-factors approach can be used "if and only if" the comparable-sales approach is inadequate. *Bartlett & Co. Grain v. Bd. of Rev.*, 253 N.W.2d 86, 88 (Iowa 1977); *Wellmark*, 875 N.W.2d at 679; *Ross*, 417 N.W.2d at 465. The rule requires a fact-finder to first determine that the comparable-sales approach is unworkable before considering other factors. *Bartlett*, 253 N.W.2d at 88. Once in the other-factors category, an assessor may not consider the "[s]pecial value or use value of the property to its present owner" or "the goodwill or value of a business" using the property. Iowa Code § 441.21(2). But the supreme court limited the scope of that prohibition. *See Wellmark*, 875 N.W.2d at 679 ("Although the legislature has prohibited consideration of special value and good will, we have narrowly construed these exceptions."). So long as "improvements to a property are not merely valuable to the specific owner but would be of value to others, such improvements should be recognized in the valuation process." *Id.* at 683.

With these principles in mind, we turn to the parties' contentions. Lowe's argues the PAAB improperly valued the property according to its "current use," rather than the fair market value as required by Iowa Code section 441.21(1)(b). Lowe's relies on *Wellmark*, 875 N.W.2d at 679, to bolster its contention that "'other factors' related to use value can be considered 'if and only if' the record does not show a market for the sale of similar properties." Maintaining that "current use" cannot be considered in determining market value under the preferred approach, Lowe's contends the PAAB's consideration of "current use," despite evidence of "a robust market for sale and lease of big box retail properties," violated the directives of *Wellmark* and Iowa Code section 441.21(1)(b).

In resistance, the PAAB argues Lowe's misconstrues the meaning of "current use," as discussed in *Wellmark*. The PAAB asserts "*Wellmark* is the latest in a long line of court rulings" that has considered the property's current use when assessing market value under section 441.21. According to the PAAB, *Wellmark* "articulated a general proposition that property should be valued in its current use, regardless of the valuation approach used." The PAAB also challenges Lowe's reading of the statute, claiming "nothing in the text of section 441.21 can reasonably be interpreted as a directive that a property's current use can only be considered when valuing a property using other factors."

The PAAB is correct. Lowe's conflates the idea of "current use" with "use value of the property to its present owner" under Iowa Code section 441.21(2). In doing so, Lowe's insists "current use" and "value in use" share one meaning in the *Wellmark* decision.[5] Based on that faulty underlying assumption, Lowe's concludes that the statute prohibits an assessor from considering the property's current use when determining its market value through a sales analysis. Put differently, Lowe's reads *Wellmark* as relegating the relevance of "current use" to the other-factors approach in section 441.21(2).

---

[5] In *Wellmark*, the court explored the differences between the phrases "value in use" and "value in exchange." 875 N.W.2d at 673 (noting exploration was "designed to illustrate some of the principles and challenges facing the court" and not intended as binding or even persuasive authority). The court defined "value in use" as "the value a specific property has for a specific use." *Id.* On the other hand, "value in exchange" means "the value to persons generally and focuses on market value based upon a willing buyer and willing seller." *Id.* But the court did not draw an indelible line separating the two concepts. Instead, the court recognized, "Even in a jurisdiction that embraces a strict value-in-exchange theory, the use of a property still may be germane to value under the theory that the current use of the property would impact what a willing buyer would pay for the property in the marketplace." *Id.* at 675.

By contrast, PAAB employs the phrase in a broader context. In its ruling, the agency referred to "current use" when discussing the requirement that "property is to be valued based on its 'present use.'"[6]  *See Soifer*, 759 N.W.2d at 784 (quoting Iowa Admin. Code r. 701-71.1(1)).  Because the PAAB associates the phrase "current use" with this more general principle, it argues that *Wellmark* did not reinterpret section 441.21 to excise "current use" from the determination of fair market value.

In sorting the parties' divergent definitions of "current use," we must focus on what our supreme court said and didn't say in *Wellmark*.  Lowe's argues the *Wellmark* decision established "that current use valuation is an exception to the market value rule, and can only [be] considered when there is no active market for the property at issue."  We disagree.  A closer reading of *Wellmark* shows the supreme court discussed "current use" in a general sense and not within the strict confines of section 441.21(2).  The issue was "whether the Wellmark property should have been valued as if it were a multitenant office building . . . or whether the Wellmark property should have been valued according to its current use [as] a single-tenant headquarters building."  *Wellmark*, 875 N.W.2d at 668.  In going with the latter, the court reasoned "the fact that the property is currently being successfully used as a single-tenant corporate headquarters cannot go unnoticed."  *Id.* at 683.  The court added, "Current use is an indicator that there is demand for

---

[6] The words "current" and "present" are synonyms.  *See In re S.R.N.*, 481 N.W.2d 672, 682 (Wis. Ct. App. 1992).

such a structure." *Id.* Taken as a whole, *Wellmark* remained faithful to the governing rule that a property's value depends on its current use.

We acknowledge the possible confusion from *Wellmark*'s discussion of "current use" in the other-factors section. But the context is crucial. In concluding "that the property should be valued based on its current use," the court pointed to "the principle articulated in *Maytag* and *Soifer*." *Wellmark*, 875 N.W.2d at 682 (citing *Maytag Co. v. Partridge*, 210 N.W.2d 584 (Iowa 1973), and *Soifer*, 759 N.W.2d at 784). While touting *Wellmark*'s dicta, Lowe's fails to address those two cases. As a result, Lowe's takes the court's language out of context. Indeed, *Wellmark*'s embrace of *Maytag* and *Soifer* clarifies the current use issue.

In both cases, the supreme court rejected the taxpayers' contentions that commercial property valuations could not be based on the current use of the property. In doing so, *Maytag* distinguished current use of a property from the other factors in section 441.21(2). *Maytag*, 210 N.W.2d at 590–91. *Maytag* provided that "special value or use of property to its present owner comes into play when sentiment, taste, or other factors, frequently subjective, give property peculiar value or use to its owner that it does not have to others." *Id.* at 591. In distinguishing "special value" from "current use," *Maytag* explained:

> When an assessor considers the use being made of property, he is merely following the rule that he must consider conditions as they are. He is recognizing the effect of the use upon the value of the property itself. He is not adding on separate items for good will, patents, or personnel.

*Id.* at 590. Thus, *Maytag* recognized that a property's current use was relevant under the general rule covering valuation.

Likewise, in *Soifer*, the court discussed "current use" in the context of the administrative rule—that property must be valued according to its "present use." *See Soifer*, 759 N.W.2d at 784 (rejecting taxpayers' claim that property should be valued for general restaurant purposes because "valuing the Soifers' property as if it were not a viable McDonald's would be contrary to the principle that assessed property is valued based on its present use, including any functioning commercial enterprise on the property"). Most important here, *Soifer* applied that general principle even though an active market of comparable sales was available. *See id.* at 785 (concluding taxpayers offered evidence of "sufficiently similar" comparable properties).

In its ruling, the PAAB relied on the basic principles in *Maytag* and *Soifer* that (1) properties should be valued based on their present use, and (2) assessors should consider conditions as they are. Consistent with the case law, the PAAB found Allen's appraisal less persuasive because he did not adequately adjust the property's valuation based on its present use or current conditions. Some deficiencies included "Allen's failure to acknowledge any contributory value of the garden center and other outdoor sales area"; Allen's use of multi-tenant or deed-restricted comparables that differed from Lowe's current single-occupant retail use; and "Allen's decision not to, at minimum, estimate the subject's land value." The PAAB also criticized Allen for failing to make adjustments for post-sale expenditures in his comparable-sales approach. The PAAB noted: "Without adjustments, these comparable sales prices essentially reflect the value of vacant buildings potentially in need of remodeling for retail use. As such, we do not believe they reflect the current use of the subject property."

Based on these shortcomings, we agree with the district court's conclusion that the PAAB's rejection of Allen's appraisal was appropriate. The agency's action was not based on an erroneous interpretation of law. All of PAAB's criticisms were consistent with the rule that "an assessor must . . . consider conditions existing at the time and the condition of the property in which the owner holds it." *Maytag*, 210 N.W.2d at 589. Applying that rule, we reject Lowe's contention that a fee simple interest must be valued as vacant. Neither section 441.21 nor case law imposes a vacancy requirement in the fee simple valuation context. Finally, the PAAB's consideration of the property's current use did not violate Iowa law. Because *Wellmark* did not depart from the principle in *Maytag* and *Soifer* that a property should be valued at its current use, we affirm the district court's judicial review.

**AFFIRMED.**